2019 UT App 207

## THE UTAH COURT OF APPEALS

ADAM LEGRANDE PEEPLES,
Appellee,

*v.*

ANNALEISE T. PEEPLES,
Appellant.

Opinion
No. 20180713-CA
Filed December 19, 2019

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 044901980

D. Brian Boggess, Attorney for Appellant

Adam L. Peeples, Appellee Pro Se

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

HARRIS, Judge:

¶1     Annaleise T. Peeples (Mother) asked the district court to modify her divorce decree to give her sole custody of her two teenage daughters, but the district court refused, determining that Mother had failed to demonstrate any substantial change in the circumstances underlying the original decree. Mother now appeals the district court's order dismissing her petition to modify, and we affirm.

BACKGROUND

¶2     In 2004, after about three-and-a-half years of marriage, Adam Legrande Peeples (Father) filed for divorce from Mother, citing irreconcilable differences. Around the same time, Father

also sought and obtained a protective order against Mother, asserting that Mother had been physically abusive to him; that protective order awarded temporary custody of the parties' two young daughters to Father. The parties were each represented by counsel in both the divorce and the protective order proceedings, and because of the allegations of physical abuse, the court also appointed a guardian ad litem to represent the best interests of the two children. Early in the divorce case, all parties and counsel appeared before a domestic relations commissioner to discuss the parties' motions for temporary orders. Following that hearing, the commissioner entered a temporary order, later countersigned by the assigned trial judge, awarding temporary custody of the children to Father, as the protective order did, with Mother receiving parent-time.

¶3    As the divorce proceedings progressed, the district court appointed a custody evaluator to make a recommendation to the court. While the custody evaluation was ongoing, the court entered a stipulated bifurcated decree of divorce in 2005, severing the parties' marital union but reserving all other issues, including custody and parent-time, for further proceedings. In 2007, Mother filed her first motion for a change in custody, alleging that the temporary order giving custody to Father was unworkable because Mother lived in northern Utah County and Father lived in Salt Lake County, and because Father had "moved three times in three years and has not demonstrated stability." Father objected, and after briefing and oral argument, the commissioner denied Mother's motion.

¶4    In October 2007, soon after the commissioner denied Mother's motion for a change in temporary custody, the parties and counsel participated in a settlement conference with the custody evaluator, at which the evaluator orally shared with the parties his recommendation: that primary physical custody remain with Father. At a hearing in December 2007, the guardian ad litem informed the court that he agreed with the custody

evaluator's recommendation. At that same hearing, the district court set a date for a bench trial to resolve all remaining issues.

¶5     Following the commissioner's ruling on Mother's motion and the court's decision to set a trial date, as well as the revelation of the recommendations made by the custody evaluator and the guardian ad litem, the parties and their counsel entered into negotiations, and were able to resolve the remaining issues by stipulation. On April 28, 2008, after more than four years of divorce litigation, the court entered a stipulated amended decree of divorce, awarding the parties "joint legal custody" of the children, but awarding Father "primary physical custody." Mother was to have "liberal parenting time" amounting to five out of every fourteen overnights during the school year, with the schedule to be "reversed" during the summertime.

¶6     Perhaps not surprisingly, given the nature and tone of the four years of pre-decree litigation, entry of the final divorce decree did not end the divisiveness and discord between these parties. About a year-and-a-half after the amended decree was entered, Mother filed a petition to modify, seeking amendments to the parent-time provisions of the decree. Mother alleged that circumstances had changed substantially since the entry of the decree because Father had enrolled the children in year-round school, rendering certain of the decree's provisions unworkable, and because Father had violated the decree in numerous particulars. Father responded by filing a cross-petition to modify, seeking sole legal and physical custody. After further proceedings, the district court declined to modify the original divorce decree, and denied the parties' dueling petitions.

¶7     A few years later, in 2013, Mother filed the instant petition to modify, this time seeking sole physical custody of the children. Mother asserted that circumstances had changed in three specific ways. First, she contended that Father had been

"unable to provide a stable home environment" and find "stable employment." Second, she contended that Father had "denied [her] physical visitation" to which she was entitled pursuant to the decree. Third, she contended that Father had "become violent with other people" and that "the children [had] been emotionally abused."

¶8    Soon after the filing of Mother's 2013 petition to modify, the parties agreed to have another custody evaluation done. After some procedural wrangling about the identity of the evaluator, the court finally appointed one, and the new evaluator interviewed the parties and the children in the fall of 2015. In January 2016, the evaluator shared her recommendation with the parties' attorneys: that Mother be awarded sole physical custody, with Father to receive "standard minimum parent time." Soon thereafter, the court appointed a different guardian ad litem (GAL) to represent the best interests of the children during the proceedings on the petition to modify.

¶9    From there, it took over a year to get to trial on the petition to modify; trial eventually took place over two days in December 2017. Just a few days before trial was to begin, the GAL issued a report containing his recommendations. Unlike the custody evaluator, the GAL recommended that the custody arrangement remain unchanged, with Father retaining primary physical custody. He explained that, while he understood the evaluator's "rationale for recommending a change in custody at the time [the] evaluation was performed, over two years [had] passed" since the evaluator conducted her interviews, and he expressed his view that the information on which the evaluator based her conclusions was outdated.

¶10    At trial, Mother (as the petitioner on the petition to modify) presented her case first, and called three witnesses over the first day-and-a-half of trial: herself, Father, and the custody evaluator. At the conclusion of Mother's case-in-chief, Father

made an oral motion to dismiss the petition to modify, arguing that Mother failed to "meet her burden to prove that a significant change in circumstances has taken place." After hearing argument from both sides, as well as from the GAL, the court granted Father's motion. The court explained that Father's relative instability had been constant since before the decree was entered, and therefore was not a change in circumstances; that any violations by Father of the terms of the decree could be resolved in contempt proceedings, and—especially in a case in which "[t]he parties have been in constant conflict since their separation and likely before"—that those violations did not rise to the level of unworkability that would constitute a change in circumstances; and found that there had not been any violence or emotional abuse. The court noted that the parties had been fighting over custody for some thirteen years, and that the fighting had been fairly constant. The court stated that, in such a "high-conflict" case, "if anything, the need to show a change in circumstances [is] even stronger," and "the need for a permanent decree . . . that people can rely on . . . is that much greater." A few weeks later, the court entered a written order, drafted by Father's counsel, dismissing Mother's petition to modify; that order contained a provision stating that, "[i]n a high conflict divorce such as this one, the need for finality is even greater and therefore the burden to show a material and significant change in circumstances should be higher than normal."

## ISSUE AND STANDARDS OF REVIEW

¶11 Mother now appeals from the district court's order dismissing her petition to modify. When reviewing such a decision, we review the district court's underlying findings of fact, if any, for clear error, *see Vaughan v. Romander*, 2015 UT App 244, ¶ 7, 360 P.3d 761, and we review for abuse of discretion its ultimate determination regarding the presence or absence of a substantial change in circumstances, *see Doyle v. Doyle*, 2009 UT

App 306, ¶ 7, 221 P.3d 888, *aff'd*, 2011 UT 42, 258 P.3d 553. The district court's choice of legal standard, however, presents an issue of law that we review for correctness. *See id.* ¶ 6.

## ANALYSIS

¶12 Mother challenges the district court's dismissal of her petition to modify on two general grounds. First, she contends that the district court employed an incorrect (and overly strict) legal standard in determining whether circumstances had changed sufficiently to justify reopening the governing custody order. Specifically, she asserts that the court did not properly take into account the fact that the decree at issue was stipulated rather than adjudicated, and she takes issue with the statement in the court's written order that, in "high conflict" cases, the burden of demonstrating a change in circumstances is "higher than normal." Second, Mother contends that the district court abused its discretion in determining, on the facts of this case, that no substantial and material change in circumstances existed. We address each of these contentions in turn.

### A

¶13 Under Utah law, petitions to modify custody orders are governed by a two-part test:

> A court order modifying . . . an existing joint legal custody or joint physical custody order shall contain written findings that: (i) a material and substantial change of circumstance has occurred; and (ii) a modification . . . would be an improvement for and in the best interest of the child.

Utah Code Ann. § 30-3-10.4(2)(b) (LexisNexis Supp. 2019). Because "[t]he required finding of a material and substantial

change of circumstances is statutory, . . . [n]either this court nor the supreme court has purported to—or could—alter that requirement." *Zavala v. Zavala*, 2016 UT App 6, ¶ 16, 366 P.3d 422; *see also Doyle v. Doyle*, 2011 UT 42, ¶ 38, 258 P.3d 553 ("Even an overwhelming case for the best interest of the child could not compensate for a lack of proof of a change in circumstances."). Thus, "only if a substantial change of circumstances is found should the [district] court consider whether a change of custody is appropriate given the child's best interests." *Wright v. Wright*, 941 P.2d 646, 651 (Utah Ct. App. 1997) (quotation simplified).

¶14 This statutory requirement that a substantial change in circumstances be present before a court may modify a custody order serves two important ends. "First, the emotional, intellectual, and moral development of a child depends upon a reasonable degree of stability." *Elmer v. Elmer*, 776 P.2d 599, 602 (Utah 1989). We have previously noted the "deleterious effects of 'ping-pong' custody awards" that subject children to ever-changing custody arrangements. *See Taylor v. Elison*, 2011 UT App 272, ¶ 13, 263 P.3d 448 (quotation simplified). Second, the requirement "is based in the principles of res judicata," as "courts typically favor the one-time adjudication of a matter to prevent the undue burdening of the courts and the harassing of parties by repetitive actions." *Id.* (quotation simplified); *see also Zavala*, 2016 UT App 6, ¶ 16 (stating that the statutory change-in-circumstances requirement is "a legislative expression of the principle of res judicata").

¶15 The change-in-circumstances requirement is itself comprised of two parts. In order to satisfy it, "the party seeking modification must demonstrate (1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody." *Hogge v. Hogge*, 649 P.2d 51,

54 (Utah 1982). In this context, however, our case law has drawn something of a distinction between adjudicated custody decrees and stipulated custody decrees, recognizing that "an unadjudicated custody decree" is not necessarily "based on an objective, impartial determination of the best interests of the child," and therefore the res judicata policies "underlying the changed-circumstances rule [are] at a particularly low ebb." *See Taylor*, 2011 UT App 272, ¶ 14 (quotation simplified). In *Zavala*, we clarified that the change-in-circumstances requirement still applies even in cases involving stipulated (as opposed to adjudicated) custody orders, although we acknowledged that, in some cases, "a lesser showing" of changed circumstances may "support modifying a stipulated award than would be required to modify an adjudicated award." *See* 2016 UT App 6, ¶ 17.

¶16    In this case, the court did not specifically discuss the distinction our case law has drawn between stipulated and adjudicated decrees, or the extent to which this decree should be considered stipulated or adjudicated. The court simply applied the change-in-circumstances requirement and found it not met on the facts of this case. In one recent case, we found no error under similar circumstances. *See Erickson v. Erickson*, 2018 UT App 184, ¶ 21, 437 P.3d 370 (declining to reverse a district court's determination that no substantial and material change in circumstances had been shown, despite the fact that the district court did not specifically consider "the fact that the underlying custody award was based on a stipulated agreement").

¶17    But more to the point, we think it unhelpful to view the adjudicated/stipulated dichotomy as entirely binary; instead, in assessing how much "lesser" a showing might be required to satisfy the change-in-circumstances requirement, *see Zavala*, 2016 UT App 6, ¶ 17, courts should examine the origin of the order in question and analyze the extent to which the order—even if stipulated—reflects the result of robustly contested litigation aimed at ascertaining the best interest of the child.

¶18　We discern no error here, even though the district court did not expressly discuss the origin of the custody decree at issue, because the decree—although entered as a result of a negotiated settlement—was more akin to an adjudicated decree than a non-adjudicated decree. Here, the decree was finalized in April 2008, after more than four years of litigation between the parties, during which both parties were represented by counsel the entire time. The parties had fully litigated not only motions for protective orders, which involved custody determinations made by a court, but also motions for temporary orders before the court commissioner and the district court wherein temporary custody determinations were made. Moreover, the court had appointed a guardian ad litem to represent the children, and in addition a full evaluation had been performed by a neutral court-appointed custody evaluator. The parties did not reach their negotiated settlement in this case until after they had received input from not only the custody evaluator and the guardian ad litem, but also from the commissioner and the court during the temporary orders process. By the time the settlement was reached, four years of litigation had passed and a trial date had been set. In the end, the decree encapsulated, for the most part, the recommendations made by the guardian ad litem and the custody evaluator, and memorialized an arrangement very similar to the one previously ordered by the court on a temporary basis.

¶19　We certainly recognize the potential for injustice with certain types of stipulated custody orders; indeed, this is part of the reason why courts, when considering petitions to modify, retain the flexibility to be less deferential to stipulated custody orders. *See Taylor*, 2011 UT App 272, ¶ 14 (stating that unadjudicated custody decrees "may in fact be at odds with the best interests of the child" (quotation simplified)). Depending on the situation, our confidence that a stipulated custody decree—at least one that is submitted to the court before receipt of input from judicial officers during the temporary orders process or

from custody evaluators or guardians ad litem—will actually be in keeping with the best interest of the child may be comparatively low, especially where neither side is represented by counsel (or, potentially more concerning, when only one side is represented by counsel). Inequalities in negotiating power or financial resources can sometimes result in one parent agreeing to conditions by stipulation that may not be in the long-term best interest of the child.

¶20    But such concerns are not present in a case like this one, where the parties reached a negotiated agreement after fully and robustly participating in the litigation process, with lawyers, for more than four years. The terms of the negotiated custody decree in this case—entered on the eve of a scheduled trial—did not substantially deviate from the terms of the temporary custody order imposed by the court, and were heavily influenced by the recommendations of both the custody evaluator and the guardian ad litem. In this case, therefore, we have relatively high confidence that the custody order was in line with the best interests of the children. Accordingly, we discern no error in the district court's decision to apply the change-in-circumstances requirement without watering it down to account for the fact that the custody order in question was, technically speaking, stipulated.

¶21    We are more concerned, however, with the district court's statement in its written order that, in "high conflict" cases, "the burden to show a material and significant change in circumstances should be higher than normal." The district court offered no citation to any authority supporting this principle in our case law, and we are aware of none. We take this opportunity to clarify that there is no separate standard that courts are to apply in high-conflict cases when considering whether a substantial change of circumstances is present in the context of a petition to modify. Nevertheless, we are not persuaded that the district court's statement made a material

difference to its analysis in this case. In context, especially after reviewing the court's oral ruling, we view the court's statement as simply acknowledging that, in high-conflict divorce cases, parties are perhaps more willing to seek modification more often, and that the danger of "ping-pong" custody awards in those cases is therefore proportionately higher.

¶22    In the end, we are convinced, after a review of the full record, that the district court applied the proper two-step analysis to determine whether a substantial and material change in circumstances occurred here. First, the court analyzed whether, "since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based." *See Hogge*, 649 P.2d at 54. Second, the court analyzed whether "those changes are sufficiently substantial and material to justify reopening the question of custody." *See id.* Because we conclude that the court applied the proper test, we now proceed to analyze whether the court abused its discretion in its application of that test.

B

¶23    In her petition to modify, Mother pointed to three things that she believed led to a substantial and material change in circumstances. First, she contended that Father had been "unable to provide a stable home environment" and find "stable employment." Second, she contended that Father had "denied [her] physical visitation" to which she was entitled pursuant to the decree. Third, she contended that Father had "become violent with other people" and that "the children have been emotionally abused." After hearing evidence for a day-and-a-half, the district court concluded that these things did not constitute a substantial and material change in circumstances, finding either that they were occurring, at most, infrequently, or that they had been occurring throughout the litigation and therefore could not constitute a change in

circumstances. We conclude that the court did not abuse its discretion in making that determination.

1

¶24  Mother's first contention was that Father had "been unable to provide a stable home environment" for the children because he had "been evicted from several residences" resulting in the children having to change schools a number of times. In addition, Mother contended that Father had not "had stable employment for the last eight years." The district court acknowledged that Mother had presented evidence that Father's "income was questionable and [his] lifestyle was a little bit itinerant." But the court noted in its oral ruling that this had been the case both "before and after the decree," and that nothing had changed in this regard. In its written ruling, the court made a finding that it had "not received evidence that there has been a significant and material change in [Father's] ability to provide the children with a stable home."

¶25  It is unclear from Mother's brief whether she even intends to challenge the district court's factual findings, stating that her "appeal is primarily legal." But in any event Mother has not carried her burden—if indeed she intended to shoulder that burden—of demonstrating that the court's factual finding was clearly erroneous. As noted above, Mother alleged as early as 2007—in her pre-decree motion to alter the terms of the court's temporary custody order—that Father had "moved three times in three years and has not demonstrated stability." Despite Father's itinerant nature, the first custody evaluator recommended that primary physical custody be awarded to Father, and the stipulated decree followed that recommendation. Presumably, all of that was taken into account during the litigation that preceded entry of the decree. Moreover, in her own petition to modify filed in 2013, Mother alleged that Father's employment instability had been an issue "for the last

eight years," dating back to 2005, three years before entry of the decree. Issues that were present prior to the decree, and continue to be present in much the same way thereafter, do not represent a *change* in circumstances sufficient to justify the reopening of a custody decree. *See* Utah Code Ann. § 30-3-10.4(2)(b)(i) (LexisNexis Supp. 2019) (requiring a "change of circumstance" before reopening a custody decree); *see also Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984) (stating that the rationale behind the change-in-circumstances requirement "is that custody placements, once made, should be as stable as possible unless the factual basis for them has completely changed"). In the end, Mother has not shown that the district court's finding—that Father's employment instability and itinerant nature had been present the whole time and therefore did not constitute a substantial change in circumstances—was clearly erroneous.

2

¶26   Mother's next contention was that Father failed on numerous occasions to facilitate parent-time as required under the divorce decree. The district court found that, while Father may have committed occasional violations of the terms of the decree, "[t]he court has not received evidence that any denial of physical visitation on the part of [Father] was systemic, deliberate, or pathogenic enough to satisfy the requirements of the law in reopening" the decree.

¶27   Ordinarily, when one parent commits a violation of the terms of a divorce decree, the other parent's remedy lies in contempt. *See* Utah Code Ann. §§ 78B-6-301(5), -310 (LexisNexis 2018) (categorizing "disobedience of any lawful judgment [or] order" as "contempt[] of the authority of the court," and authorizing courts to sanction violators); *see also, e.g., Clarke v. Clarke*, 2012 UT App 328, ¶¶ 24–31, 292 P.3d 76 (resolving one parent's request for contempt sanctions against the other for

asserted violations of a custody order). In most cases, violations of a custody order by one party will not constitute the type of substantial and material change in circumstances that will justify reexamining the propriety of the order. But if the violations are so numerous and pervasive that it becomes evident that the custody arrangement is "not functioning," then a change in circumstances may have occurred. *See Moody v. Moody*, 715 P.2d 507, 509 (Utah 1985) ("[T]he nonfunctioning of a joint custody arrangement is clearly a substantial change in circumstances which justifies reopening the custody issue."); *see also Huish v. Munro*, 2008 UT App 283, ¶ 13, 191 P.3d 1242 (same).

¶28   In this case, the district court, after hearing Mother's evidence, made a factual finding that the evidence of Father's potentially contemptuous behavior was not so overwhelming as to render the decree unworkable. The court noted that the parties had been "in constant conflict since their separation and likely before," and that they were "still at war" thirteen years after their separation. The court found that, while Father may have violated the decree with regard to parent-time on a few occasions, Father's violations were not "systemic, deliberate, or pathogenic enough to satisfy the requirements of the law in reopening" the decree.

¶29   As noted above, it is unclear if Mother even intends to challenge the district court's factual findings, but in any event she has not demonstrated clear error here. The district court's finding that the decree had not been rendered unworkable as the result of Father's violations was supported by, among other evidence, the recommendation of the court-appointed GAL, who expressed the view that the custody arrangement was working well enough and should remain unchanged, and that "the children have maintained throughout these proceedings that they are happy with the current arrangement." Mother has not demonstrated that the district court's determination about the decree's workability was clearly erroneous.

3

¶30    Mother's final contention was that Father had "become violent with other people and the children have been emotionally abused." After hearing the evidence, the district court found insufficient evidence that Father had been violent or that he had emotionally abused anyone. In her brief, Mother makes no serious effort to challenge this factual finding, and therefore we are unable to find any error therein.

4

¶31    Given that Mother has not mounted a successful challenge to any of the district court's factual findings, all that remains is for us to examine whether, given these findings, the court abused its discretion in determining that no material and substantial change in circumstances had occurred. *See Doyle v. Doyle*, 2009 UT App 306, ¶ 7, 221 P.3d 888, *aff'd*, 2011 UT 42, 258 P.3d 553. And on this record, we have no trouble concluding that the court did not abuse its discretion in making that determination. Many of the issues identified by Mother in her petition—such as Father's unstable employment and frequent change of residence—had been present from the outset of this case, and were present before the decree was entered; such ever-present conditions cannot constitute a *change* in circumstances sufficient to reopen a custody decree. Any issues Father had with complying with the terms of the decree were apparently not egregious or pervasive enough to render the custody arrangement unworkable. And the district court, after listening to a day-and-a-half of evidence, did not hear any evidence that Father had acted violently or abusively toward anyone.

¶32    Under these circumstances, the district court did not abuse its discretion in concluding that Mother had not carried her burden of demonstrating a change in circumstances that was substantial and material enough to justify reexamining the parties' longstanding custody arrangement. Because Mother did

not satisfy the first part of the statutory test for obtaining a modification of a divorce decree, the district court did not err by dismissing her petition.

CONCLUSION

¶33     For all of the foregoing reasons, we affirm the district court's dismissal of Mother's petition to modify.

────────