2023 UT App 1

## THE UTAH COURT OF APPEALS

AMBER SPENCER,
Appellee,
*v.*
REAGAN SPENCER,
Appellant.

Opinion
No. 20210437-CA
Filed January 6, 2023

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 144401038

Lillian M. Reedy, Attorney for Appellant

Steven B. Wall, Attorney for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.[1]

BENCH, Senior Judge:

¶1 Reagan Spencer appeals the district court's denial of his
petition to modify a divorce decree. He argues that the court
abused its discretion in determining that there had not been a
substantial and material change in circumstances to warrant
modification. He also challenges several financial determinations
made by the court in relation to several orders to show cause. We
see no error in these determinations of the district court, and we
therefore affirm.

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

BACKGROUND

¶2      Reagan and Amber Spencer were married in July 2007, and they are the parents of two minor children. The parties separated in May 2014, and Amber[2] petitioned for divorce soon thereafter, requesting joint legal custody and sole physical custody of the children. Reagan, through his attorney, timely responded, requesting joint legal custody and joint physical custody. With his response, Reagan requested several temporary orders addressing custody, parent-time, property and debt of the parties, and other financial issues, including child support. Among other things, he requested that Amber be restrained from "drinking alcohol to excess, smoking, using illegal drugs, or abusing prescription[] drugs immediate[ly] prior to, or during any visitation with the minor children" and that he be given the right to demand that Amber submit to a drug test.

¶3      Amber obtained counsel shortly thereafter, at which point she responded to Reagan's request for temporary orders and moved for a different set of temporary orders. Following a hearing on the competing requests, at which both parties were represented by counsel, the district court entered temporary orders, awarding Amber and Reagan joint legal and physical custody of the children and addressing various other issues raised by the parties.

¶4      After the district court issued its temporary orders, the parties mediated and stipulated to the appointment of a custody evaluator. The parties also ultimately agreed on several other terms, including terms regarding custody, parent-time, and child support, and those stipulated terms were accepted by the court. A final divorce decree incorporating those terms was entered in

---

2. Because the parties have the same last name, we refer to them by their first names for clarity, with no disrespect intended by the apparent informality.

October 2014, which decree made no mention of the prior alcohol and drug concerns raised by Reagan.

¶5     Two years later, in late 2016, Reagan moved for orders to show cause why Amber had not followed certain terms of the divorce decree, arguing that she had failed to reimburse him for childcare expenses, reimburse certain debts, dismiss a protective order, and provide required tax information.[3] Reagan also filed a petition to modify the divorce decree, requesting sole physical custody of the children due to an asserted change in circumstances. Specifically, Reagan alleged that Amber worked evenings and was away from home, that she failed to come home at all some nights, that she allowed drug use in her house, that her house was overcrowded, that she did not make sure the children completed their homework, that she did not give the children adequate care for health conditions, and that she "dr[ank] excessively" while she had the children.

¶6     The parties attended another mediation and were able to come to a partial agreement as to the issues involving the orders to show cause before the court. This partial agreement was thereafter accepted by the court. Later, though, Reagan again filed motions for temporary orders granting him sole physical custody of the children, arguing that Amber's home was not a "safe environment" for the children. After further mediation was unsuccessful, the case was eventually certified for trial as to the issues of custody and child support, and a bench trial was set for October 2017.

---

3. In a different case, Amber obtained a protective order against Reagan in 2011. The protective order was temporarily modified in June 2014, around the time the divorce case was commenced. The district court later dismissed the protective order in 2018, after the parties had reached their stipulated divorce decree.

¶7     However, in September 2017, the parties participated in a settlement conference and were able to reach an agreement, which was eventually memorialized in a court order. The agreement maintained custody as listed in the original divorce decree but specified further restrictions, including restrictions on the parties' consumption of alcohol in front of the children and requiring the parties to participate in individual counseling for one year.

¶8     In March 2018, Reagan again filed a motion for an order to show cause, alleging that Amber was disobeying the prior order by, among many other things, consuming alcohol in the children's presence. In May, the court commissioner certified many of the issues raised for an evidentiary hearing. Shortly thereafter, Reagan also requested an emergency temporary order awarding him sole physical custody of the children, claiming that Amber had been drinking and driving with the children. And he filed another petition to modify the divorce decree, arguing that Amber's "alcohol problems and mental health issues have risen to a level of harm to the children." He further informed the court that the Department of Child and Family Services (DCFS) "ha[d] supported a finding that Mother has endangered the children." The court granted a temporary restraining order a few days later, awarding Reagan physical custody of the children and awarding Amber supervised parent-time. After a hearing later that month, the district court entered a new temporary order, instructing Amber to "continue counseling for substance abuse issues" and "follow through with [the] DCFS action plan." The order also stated that Amber could "request hearing review . . . by showing that she has complied with [the] DCFS action plan and proof of her continued counseling progress."

¶9     After many motions and determinations regarding custody and other financial considerations over the following year, Amber moved to vacate the district court's most recent temporary custody order and restore the previous order of joint custody. Amber explained that Reagan's allegations of drinking

and driving were due to his discovery of empty beer cans on the floor of her vehicle, which she asserted "she hadn't gotten around to discarding" after a prior camping trip. After Reagan saw the beer cans, he had called police, who, after hearing Amber's explanation, told her that it was illegal to have even an empty container in her car but did not cite her for the violation. Reagan thereafter also notified DCFS of the incident, which commenced an investigation and led to DCFS conducting interviews with Reagan, Amber, and the children. The results of the investigation, which were included with Amber's motion, stated that "the kids are believed to be safe at this time." DCFS had completed risk assessments on each of the parties' homes and each had scored "moderate due to priors." DCFS determined no services were needed and concluded, "The current risk in both homes is considered low as there are no obvious signs of immediate risk." Amber also included with her motion a letter from her counselor, stating that she had been attending counseling "on a regular basis."

¶10 In February 2020, after a hearing on Amber's motion to vacate the temporary custody change, the district court lifted the supervision requirement from Amber's parent-time and normalized parent-time, but it also ordered her to participate in random alcohol testing.

¶11 In September 2020, the district court held a bench trial on Reagan's petition to modify, and the court thereafter entered findings and conclusions supporting its denial of Reagan's petition. The court recognized Amber's "extremely active regimen of 75 breathalyzer tests taken over a six-month period in 2020 which did not yield one positive test" and accounted for the "few" times Amber had missed a test.[4] The court also examined several incidents that Reagan had advanced to support his claims

---

4. The court acknowledged that one test did show "a minute trace . . . due to having just taken cough syrup."

of Amber struggling with alcohol and ultimately determined, "[Reagan] attempted to present testimony that was suggestive at best and clearly exaggerated circumstances to support his narrative that [Amber] had an alcohol problem and neglected the children." The court also questioned "just how concerned or genuine were [Reagan's] claims" of years of alcohol problems where he had agreed to a 50/50 custody arrangement just months before filing this petition to modify. Finally, the court was persuaded by the contrary DCFS report, "which did not result in any finding of a drug or alcohol problem of any kind nor did it even result in a recommendation of a change of [Amber's] custody or even the recommendation of any further services of any type."

¶12   The district court's decision also addressed several financial issues that had been raised by the parties while the petition to modify was pending, specifically, issues relating to child support, unreimbursed child-related expenses, and unaddressed debts. And finally, the court denied all Reagan's requests for attorney fees but awarded Amber attorney fees in substantially prevailing in her defense against the petition to modify and one of the orders to show cause. Reagan then filed this appeal.


ISSUES AND STANDARDS OF REVIEW

¶13   Reagan appeals the district court's denial of his petition to modify child custody. "When reviewing such a decision, we review the district court's underlying findings of fact, if any, for clear error, and we review for abuse of discretion its ultimate determination regarding the presence or absence of a substantial change in circumstances. The district court's choice of legal standard, however, presents an issue of law that we review for correctness." *Peeples v. Peeples*, 2019 UT App 207, ¶ 11, 456 P.3d 1159 (citations omitted).

¶14 Reagan also challenges the district court's determinations on various financial issues, including the award of attorney fees to Amber. "We do not reverse a trial court's findings of fact unless they are clearly erroneous. Further, to determine if the findings are against the clear weight of the evidence and thus clearly erroneous, we view the facts in the light most favorable to the findings." *Kelley v. Kelley*, 2000 UT App 236, ¶ 18, 9 P.3d 171 (quotation simplified). "While the trial court's findings of fact in divorce appeals are reviewed under the clearly erroneous standard, its conclusions of law are reviewed for correctness and given no special deference on appeal." *Bingham v. Bingham*, 872 P.2d 1065, 1067 (Utah Ct. App. 1994) (quotation simplified). As to the attorney fee issue, "generally, we review a trial court's decision regarding attorney fees in a divorce proceeding for an abuse of discretion." *Hall v. Hall*, 2013 UT App 280, ¶ 10, 316 P.3d 970 (quotation simplified).

ANALYSIS

I. Child Custody

¶15 Reagan argues that the district court did not properly analyze the evidence presented related to his most recent petition to modify. Specifically, he argues that because prior custody determinations were stipulated agreements, a much lesser showing of change of circumstances was required to modify the custody arrangement. We disagree.

¶16 Modification of a joint custody order is appropriate when the court finds that "(i) a material and substantial change of circumstance has occurred; and (ii) a modification of the terms and conditions of the order would be an improvement for and in the best interest of the child." Utah Code Ann. § 30-3-10.4(2)(b) (LexisNexis 2019). Thus, "generally, the trial court need not consider evidence of the child's best interests until it finds

changed circumstances." *Taylor v. Elison*, 2011 UT App 272, ¶ 12, 263 P.3d 448 (quotation simplified). This requirement serves two policies: First, to "protect[] children from the deleterious effects of 'ping-pong' custody awards" and, second, "to prevent the undue burdening of the courts and the harassing of parties by repetitive actions." *Id.* ¶ 13 (quotation simplified).

¶17 But as Reagan rightly points out, the second of these considerations "is at a particularly low ebb" when a custody decree was not litigated in the first instance but was simply an agreement of the parties. *Id.* ¶ 14 (quotation simplified). Further, "an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child and may in fact be at odds with the best interests of the child." *Id.* (quotation simplified). Thus, in cases involving an unadjudicated custody decree, "a lesser showing [of change of circumstances] will support modifying a stipulated award than would be required to modify an adjudicated award." *Zavala v. Zavala*, 2016 UT App 6, ¶ 17, 366 P.3d 422.

¶18 We have, however, more recently clarified that "in assessing how much 'lesser' a showing might be required to satisfy the change-in-circumstances requirement, courts should examine the origin of the order in question and analyze the extent to which the order—even if stipulated—reflects the result of robustly contested litigation aimed at ascertaining the best interest of the child." *Peeples v. Peeples*, 2019 UT App 207, ¶ 17, 456 P.3d 1159 (citation omitted). Thus, in a situation where a custody order is technically stipulated, the watered-down change-in-circumstances requirement may not apply if circumstances are such that "we have relatively high confidence that the custody order was in line with the best interests of the children." *Id.* ¶ 20 (determining that the district court did not err in applying the normal change-of-circumstances requirement where there were years of litigation between the parties during which they were represented by counsel, and where they had fully litigated

protective orders and other temporary orders as well as had a full evaluation by a custody evaluator).

¶19 We determine that the case before us is such a case. Although the custody determination that Reagan seeks to modify is technically stipulated, the circumstances surrounding its creation are such that we have confidence that it was in line with the best interests of the children. The parties, represented by counsel, participated in litigation prior to their eventual agreement to the original divorce decree. They again litigated custody issues a couple years later, ultimately arriving at an agreement on the matter. Along the way, the parties have been largely represented by counsel and have sought several orders to show cause, filed for protective orders, and participated in hearings and mediations. This is a far cry from a situation where the parties came to a stipulation on their own and the court simply adopted it without much exploration into the best interests of the children. Thus, we see no error with the district court's apparent failure to consider applying a lesser change-of-circumstances requirement.

¶20 Additionally, we are not convinced that a different standard would have led to a different result in this case, where the district court appeared to be entirely unpersuaded that the alleged changes in circumstances—Amber having alcohol issues that were "out of control" and mental health issues that had "risen to a level of harm to the children"—existed in any meaningful degree. The court stated that Reagan's evidence was, at best, "suggestive" and that he "clearly exaggerated circumstances" to support his claims. It also recognized that several of the incidents Reagan complained of were "capable of easy corroboration," yet none was given. The court appeared doubtful of Reagan's credibility, noting Amber's uncontroverted testimony that Reagan began to make his accusations only after "she refused to carry on the sexual relationship" between the two of them. Additionally, the court questioned how genuine Reagan's

concerns were considering that even after asserting similar claims in the past, he still, just a few months before filing his petition, "agreed to a 50/50 custody arrangement with [Amber]."

¶21 The district court also considered much of the evidence to be in Amber's favor. The court referenced the "extremely active regimen" of negative breathalyzer tests and listed in some detail the reasons for the "few" missed tests. The court considered it important that the DCFS investigation did not support Reagan's allegations either:

> [The] DCFS investigation did not find the children's environment to be unstable or that there were any hygiene issues, nor did [it] find any mental health issues on the mother's part. Rather, and coincidentally, DCFS found the children to be safe with [Amber] and that her home presented a low risk assessment and did not require any ongoing services which was the same assessment it gave to [Reagan].

Thus, the court did take into consideration the current circumstances and relied heavily on the investigation by DCFS—an entity whose overriding consideration was assuring that the children were safe.

¶22 Reagan takes issue with the district court's determinations and argues that the court "failed to consider the full evidence presented." But in view of the detailed findings of the district court, we cannot say that the court did not consider the complete picture or otherwise abused its discretion in not finding a material change in circumstances. And to the extent Reagan challenges any of the court's specific findings underlying that determination, he has not pointed us to any evidence that would lead us to conclude that those findings were clearly erroneous. Thus, we see no error in the district court's denial of Reagan's petition to modify.

## II. Financial Issues

¶23    Reagan makes a cursory argument contesting several of the district court's findings and conclusions regarding financial issues. "An appellant has the burden of persuasion on appeal and must point out the perceived errors of the lower court and provide an argument containing the contentions and reasons with respect to the issues presented, with citations to the authorities, statutes, and parts of the record relied on." *Roberts v. Roberts*, 2014 UT App 211, ¶ 33, 335 P.3d 378 (quotation simplified); *see also* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."). Reagan has not borne this burden.

¶24    First, Reagan challenges findings regarding reimbursement for childcare and child therapy costs. He argues that an order entered in March 2019 had already determined that Amber owed these costs, subject to verification. But the "order" he references is simply a minute entry containing the court commissioner's recommendations after an order to show cause hearing. Further, during that order to show cause hearing, the commissioner had specifically stated, "I don't want to do the order until the 30 days has run and everyone's exchanged information and you've worked out the numbers." Thus, there was no order entered in March 2019 addressing these costs. And Reagan does not point us to a resulting order that was later entered on these costs or to where in the record the required proof of the costs was submitted. Nor does he engage with the reasoning set forth by the district court in denying reimbursement on these expenses—that is, that the therapy was not physician-recommended, that Reagan needed to consult with Amber before incurring the debt, and that each party was responsible for childcare expenses for the weeks when they had the children—and show why such reasoning was in error.

¶25 Second, Reagan contests the district court's finding regarding a judgment against the parties in a different civil case. The district court made no modification to address this judgment because it determined it was "for personal loans taken out by [Reagan] and for a broken lease which [Reagan] never made [Amber] aware of." Reagan simply argues that Amber was aware of this debt; but he does not provide any explanation as to when and how she became aware of the debt, nor any citation to record evidence supporting such a claim.

¶26 Finally, Reagan challenges the district court's refusal to award him attorney fees below on certain motions and orders to show cause. He argues simply that the court awarded him some of the amounts requested in his motions and then "certified attorney fees for trial." But Reagan does not explain why partial initial successes and certifying the fees for trial would make it erroneous for the district court to later deny those fees after further consideration at trial. Further, Reagan certainly makes no effort to address the court's reasoning for denying fees, including that both parties were in violation of the divorce decree and so neither party substantially prevailed on some motions, that requests for fees had already been denied, that an objection to a denial of attorney fees was not timely filed, that Amber had substantially prevailed in defending one of the orders to show cause,[5] and that a motion Reagan filed was entirely unnecessary.

¶27 In sum, Reagan does not engage with the reasoning of the district court or point us to evidence in the record or controlling

---

5. Reagan also challenges the district court's award of attorney fees to Amber in defending against this order to show cause and his petition to modify, arguing that "there is no finding of fact or conclusions of law to support the award." But the court clearly weighed the success of each party and determined that Amber substantially prevailed on both of those issues. Thus, Reagan also fails in his challenge to these attorney fees awarded to Amber.

law that would call the court's findings or reasoning into question. Reagan has not borne his burden on appeal, and we therefore decline to disturb the district court's decisions regarding these financial determinations.[6]

## CONCLUSION

¶28 The district court did not err by applying the general rule that a material and substantial change of circumstances is required for a custody modification. And Reagan has not shown that the court's determination that the alleged changes were not existent was an abuse of discretion, nor that the findings underlying the determination were clearly erroneous. Reagan has also failed to carry his burden of persuasion as to the challenged financial determinations. We therefore affirm.

———————

6. Reagan seeks an award of attorney fees as the prevailing party on appeal. *See generally Osguthorpe v. Osguthorpe*, 872 P.2d 1057, 1059 (Utah Ct. App. 1994) ("Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." (quotation simplified)). But as Reagan does not prevail on any of the issues he raises on appeal, including his argument that he should have been awarded attorney fees below, we necessarily deny this request.