2023 UT App 60

## THE UTAH COURT OF APPEALS

DAISY MARTINEZ
Appellant,
*v.*
FERNANDO SANCHEZ-GARCIA,
Appellee.

Opinion
No. 20210829-CA
Filed June 2, 2023

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 154100308

Ashley E. Bown, Attorney for Appellant

Wayne K. Caldwell, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1      When Daisy Martinez and Fernando Sanchez-Garcia
divorced, they both lived in Cache County and, under the terms
of their stipulated divorce decree, Martinez was the primary
physical custodian of and caregiver for their children. Some two
years later, Martinez moved with the children to Layton, about
sixty miles away. At that point, Sanchez-Garcia asked for a
modification of the custody arrangement, one that would give
him primary physical custody of the children in Cache County.
After a trial, the court ruled in favor of Sanchez-Garcia, modifying
the custody order to make him the primary physical custodian,
unless Martinez were to move back to Cache County. Martinez
now appeals the court's modification order, asserting that the
court failed to make a finding that circumstances had materially

and substantially changed, and that the court failed to take into account her status, up to that point, as primary caregiver. We find merit in Martinez's arguments, and therefore vacate the court's modification order and remand for further proceedings.

BACKGROUND

¶2　After five years of marriage, Martinez and Sanchez-Garcia divorced in 2017. Their stipulated divorce decree provided that the parties would share "joint legal custody and joint physical custody" of their two children, and that Martinez would have primary physical custody, with Sanchez-Garcia awarded parent-time that was something less than 50/50. The decree required the parties to "inform each other of any change of address . . . at least thirty (30) days prior to the change, if practicable," and stated that, if "either party relocate[s] to a residence more than 150 miles away," then "the relocating party shall provide notice pursuant to" Utah's relocation statute. *See* Utah Code § 30-3-37.

¶3　Some two years later, Martinez notified Sanchez-Garcia that she planned to move to Colorado with the children that summer so that she could attend nursing school. She later incorporated her relocation request into a petition to modify the divorce decree, asking the court to give her sole physical custody of the children as necessary to facilitate her move. Sanchez-Garcia responded by filing a counter-petition to modify, asking the court to change the custody provisions of the decree to give him sole physical custody of the children in the event Martinez were to relocate to Colorado.

¶4　After a hearing, a court commissioner determined that relocation to Colorado was not in the best interest of the children, and therefore recommended that Martinez's request for relocation with the children be denied, and that, if Martinez were to relocate to Colorado, primary physical custody should shift to

Sanchez-Garcia. Martinez objected to the commissioner's recommendation, and asked the district court to appoint a custody evaluator, which the court eventually did.

¶5    After completing his assessment, the custody evaluator announced his recommendation: if Martinez relocated to Colorado, Sanchez-Garcia should be granted sole physical custody of the children, with Martinez receiving parent-time pursuant to Utah's relocation statute, *see* Utah Code § 30-3-37, but if Martinez remained in Cache County, the custody arrangement should be "50/50 parent time."

¶6    Soon after receiving the custody evaluator's recommendation, Martinez decided not to move to Colorado, and effectively withdrew her petition to modify regarding that potential move (although she did continue to press for an income-related modification of child support obligations). She did not, however, remain in Cache County; instead, she relocated with the children to Layton, Utah, a city located some sixty miles from her previous residence, and she did so without providing any advance notice to Sanchez-Garcia. He objected to Martinez's move to Layton, and eventually amended his counter-petition to reflect this new development, asking the court to modify the custody order anyway, even though Martinez was not moving to Colorado, because she had relocated to Layton.

¶7    The court held a one-day bench trial to consider Sanchez-Garcia's counter-petition regarding Martinez's relocation to Layton, as well as Martinez's petition regarding amendment of the parties' child support obligations. The court heard testimony from both parties, as well as from the custody evaluator. In his testimony, Sanchez-Garcia described how his parent-time initially consisted of daily visits but no overnights, but gradually changed to a fairly consistent schedule of one weekday and alternate weekends. He noted that he has "to kind of share [his] parent time" with his extended family, who are very involved in the

children's lives. He expressed frustration that his parent-time was sometimes "covered up with sports and stuff like that." And he explained that Martinez's extended family was also very involved in the children's lives, noting that "70 percent of the time" he was instructed to drop the children off, after parent-time, not at Martinez's house but at the residence of one of her extended family members. When asked what his preferred parent-time would be, he answered "50/50" like "what [the custody evaluator] said." But he acknowledged, on cross-examination, that he had never exercised his allotted four weeks of summer parent-time. And when asked if Martinez had offered to keep the children on their Cache County soccer teams, even after her move to Layton, Sanchez-Garcia confirmed that she had but said he declined the offer because his "work schedule was getting kind of crazy" and he would not be able to get the children to practice.

¶8    In her testimony, Martinez stated that the children were happy and doing well in Layton, and that her move to Layton had not changed the amount of parent-time Sanchez-Garcia received. To cut down on travel, Martinez had offered Sanchez-Garcia parent-time every Friday instead of his midweek day,[1] and although he mentioned that he wanted a different midweek day, he never specified which one. When asked why she had wanted to move to Colorado, Martinez explained that she had applied to nursing school there because she had found it was easier to gain admission there than to the nursing programs in Cache County. She stated that, after deciding not to move to Colorado, she moved to Layton instead because there were "more school options" there, and because she had remarried and her new husband "works closer to that area" and would not have to commute "through the canyon in the wintertime." Martinez also

---

1. At the time, the children's school was asynchronous on Fridays, due to continuing COVID-19 restrictions.

explained that her remarriage had placed her in a better financial situation than when the custody evaluation occurred.

¶9     The custody evaluator testified that "the children are very well established with both parents" and recommended "50/50 parent time" if the parents lived near each other. His recommendation was largely influenced by the children's "very well established support network" in Cache County, but he admitted that his recommendations about the children not moving were specific to a move to Colorado—more than five hundred miles away—and not to Layton—some sixty miles away. While acknowledging that he would be "speculating," the custody evaluator "hypothesize[d]" that, if he were asked to assess the propriety of Martinez's move to Layton (rather than Colorado), he "would entertain and evaluate the same concerns of removing the children from a very strong and well supported network." But he conceded, on cross-examination, that he had not been asked to assess the propriety of a move to Layton, and that he did not "have a basis to form an opinion" about that specific move, especially since he had "not evaluated the children or interact[ed] with them for more than a year"; he testified that, in order to form an opinion about that particular relocation, he "would want to observe the home arrangements," "understand the arrangements for care [and] how frequently surrogate care is arranged and by whom," as well as "understand peer relationships, [and] the continuity of contact with extended family and cousins" in Cache County.

¶10     At the conclusion of the trial, the court issued a ruling from the bench granting Sanchez-Garcia's petition to modify, "consistent with [the custody evaluator's] recommendations," and awarded Sanchez-Garcia primary physical custody of the children so long as Martinez remained in Layton. However, the court ruled that, in the event Martinez moved back to Cache County, custody should be shared equally. Nowhere in its oral ruling did the court discuss whether there had been a substantial

and material change of circumstances that would justify reexamining the custody provisions of the decree.

¶11 About a month later, the court issued a written order memorializing its ruling. As in the oral ruling, the court did not discuss whether there had been a substantial and material change in circumstances, and made no findings or conclusions in that regard. It stated that it had "considered the evidence in light of the factors set forth in Utah Code [sections] 30-3-10 and 30-3-10.2," but it discussed only three of those numerous factors in its ruling. It found that "both parents are well and able parents to provide for the children," but that their "co-parenting skills [had] been compromised by the inability to communicate appropriately." It noted that the custody evaluator's recommendation—that the children not move to Colorado—"was based in large part on the fact that there is a family community here in Cache County" on both sides, and that the children's "interactions" with extended family members "have been an important part of and support for the children's lives" and that those interactions "significantly affect[] the children's best interests." The court also found that Martinez had "failed with communication," specifically finding "problematic" her decision not to notify Sanchez-Garcia prior to her relocation to Layton. The court noted, nonspecifically, that it had "relie[d] on the expertise of the custody evaluator in making its orders," but did not discuss the fact that the evaluator's recommendations had been made with regard to a potential move to Colorado, and that the evaluator had expressly made no recommendation regarding a move to Layton. And the court did not discuss the fact that Martinez had, up until the court's ruling, been the children's primary caregiver for their entire lives.

¶12 Based on these findings, the court concluded that it was in the children's best interest to be "brought back to reside in Cache County." The court specified that, in the event that Martinez came back to Cache County with them, "the parties will have parent-time on a one week on, one week off alternating schedule," but if

Martinez remained in Layton, she would enjoy only statutory minimum parent-time.[2]

ISSUES AND STANDARDS OF REVIEW

¶13　Martinez now appeals from the district court's ruling on Sanchez-Garcia's counter-petition to modify the parties' divorce decree, and she raises two issues that require our consideration. First, she contends that the court failed to make any findings regarding whether a substantial and material change in circumstances had occurred. This is a matter we review without deference, because a district "court must make findings on all material issues" when ruling on a modification petition, and a court's "failure to delineate what circumstances have changed and why these changes support the modification . . . constitutes reversible error unless the facts in the record are clear, uncontroverted and only support the judgment." *Diener v. Diener*, 2004 UT App 314, ¶ 7, 98 P.3d 1178 (quotation simplified), *cert. denied*, 106 P.3d 743 (Utah 2005).

¶14　Second, Martinez challenges the court's custody determination, asserting that the court failed to consider many of the relevant factors, including the fact that she had been the children's primary caregiver. "We review the district court's custody and parent-time determination for abuse of discretion." *Twitchell v. Twitchell*, 2022 UT App 49, ¶ 17, 509 P.3d 806 (quotation simplified).

---

2. In connection with Martinez's request to amend child support, the court also made findings regarding the parties' respective incomes, and on that basis (as well as the modified custody orders) modified the parties' child support obligations. The court's findings regarding the parties' respective incomes are not at issue in this appeal.

ANALYSIS

¶15    "Under Utah law, petitions to modify custody orders are governed by a two-part test: 'A court order modifying . . . an existing joint legal custody or joint physical custody order shall contain *written findings* that: (i) a material and substantial change of circumstance has occurred; and (ii) a modification . . . would be an improvement for and in the best interest of the child.'" *Peeples v. Peeples*, 2019 UT App 207, ¶ 13, 456 P.3d 1159 (emphasis added) (quoting Utah Code § 30-3-10.4(2)(b)). Martinez raises a challenge with regard to each part of this two-part test.

¶16    First, she asserts that the district court did not make any findings—written or oral—regarding whether "changes in the circumstances upon which the previous award was based" have occurred that "are sufficiently substantial and material to justify reopening the question of custody." *Id.* ¶ 15 (quotation simplified). Martinez's assertion is correct: we have examined the court's oral and written rulings, and we are unable to find any discussion of whether a change in circumstances had occurred.[3] This was error; a finding of changed circumstances is a "threshold requirement for modifying a divorce decree," *Larson v. Larson*, 888

---

3. It may not be sufficient for a court to make an oral—but not a written—ruling in this regard, because the governing statute requires courts to make "written findings" on both parts of the modification test. *See* Utah Code § 30-3-10.4(2)(b); *see also Hutchison v. Hutchison*, 649 P.2d 38, 42 (Utah 1982) (stating that a requirement of written findings allows an appellate court "to be in a position to review the propriety of the trial court's order," and this "requirement of written findings applies with even greater force to orders awarding or modifying the custody of a child" (quotation simplified)). But in this case, we need not consider whether an oral finding, standing alone, would be sufficient, because the court made neither an oral nor a written finding regarding changed circumstances.

P.2d 719, 722 n.1 (Utah Ct. App. 1994), and "only if a substantial change of circumstances is found should the district court consider whether a change of custody is appropriate," *Peeples*, 2019 UT App 207, ¶ 13 (quotation simplified); *see also Doyle v. Doyle*, 2011 UT 42, ¶ 38, 258 P.3d 553 ("Even an overwhelming case for the best interest of the child could not compensate for a lack of proof of a change in circumstances.").

¶17 Sanchez-Garcia acknowledges the lack of findings regarding changed circumstances, but nevertheless defends the court's ruling on two bases, neither of which we find persuasive. First, he asserts that it is "clear and uncontroverted" in the record that a substantial and material change of circumstances occurred, and he points to Martinez's "sudden relocation to Layton," which necessitated a change in schools for the children as well as a distancing from their "extensive support network" in Cache County. We recognize that Martinez's move to Layton changed the landscape, but it is not at all obvious to us that this move resulted in the sort of substantial and material change that would justify a second look at the custody arrangement. Martinez's move was well inside the 150-mile threshold that triggers the relocation statute. *See* Utah Code § 30-3-37(1). Moves within that threshold, even if they involve the crossing of a county line, do not, by themselves, necessarily indicate that a substantial and material change has taken place. Martinez presented evidence—that the court did not discuss—that the children were doing well in Layton and that her move to Layton did not result in any loss of parent-time for Sanchez-Garcia; that is, Sanchez-Garcia was enjoying just as much parent-time after Martinez's move to Layton as he had been before. *Cf. Erickson v. Erickson*, 2018 UT App 184, ¶ 18, 437 P.3d 370 (holding, on the facts of that case, that a "change in the pick-up times without a change in the number of overnights" does not amount to a material and substantial change in circumstances "that warrants a change in custody"). And the fact that the children changed schools is not necessarily something

that constitutes a *substantial* change in circumstances; a hypothetical five-mile move across town within Cache County may also have necessitated a change in schools, yet it is unlikely that such a move would, in this context, have been considered a substantial and material change in circumstances. And evidence was presented indicating that the children, even after the move to Layton, continued to enjoy significant contact with extended family on both sides. We do not foreclose the possibility that a court, under circumstances similar to these, could make a supported finding that things had changed enough to justify a second look at the custody order. But such a conclusion is far from obvious, and we expect a district court to engage with this issue and explain why it believes that to be the case. On this record, we cannot excuse the lack of findings on the basis that a substantial and material change is clear from the facts.

¶18    Next, Sanchez-Garcia claims that Martinez invited any error in this regard, because she filed her own petition to modify and therein asserted that there had been a substantial and material change in circumstances. But her petition was filed with regard to a potential move to Colorado, and was in that regard effectively withdrawn prior to trial.[4] A move to Colorado—far more than 150 miles from Cache County—would unquestionably be a substantial and material change in circumstances. But it does not follow, from her unremarkable assertion that a move to Colorado would be a substantial and material change, that she was also admitting that a move to Layton would likewise qualify as such. Indeed, in her answer to Sanchez-Garcia's amended counter-petition to modify, Martinez expressly denied Sanchez-Garcia's allegation that her move to Layton constituted a substantial and material change in circumstances. Martinez therefore did not

---

4. Her only affirmative issue remaining for trial was an assertion that the parties' incomes had changed significantly enough to justify amendment to the amount of child support ordered.

invite the court's error in failing to engage with the first part of the modification test.

¶19 Thus, we find merit in Martinez's first challenge, and conclude that, on this issue alone, we must vacate the district court's modified decree and remand for further proceedings so that the court can have an opportunity to engage with this issue and explain why Martinez's move to Layton constituted the sort of substantial and material change that necessitates a reopening of the custody provisions of the decree.[5]

¶20 We recognize that should the court on remand determine that a substantial change of circumstances has not occurred, no further analysis will be required. However, should the district court conclude that a substantial change in circumstances has occurred, the court's analysis regarding custody will also require more thorough treatment; indeed, were the court's analysis regarding custody the only matter at issue, we would vacate and remand that determination as well. Therefore, we offer the following guidance should the issue arise following remand. *See*

---

5. In connection with this inquiry, the court may need to concern itself with the question of whether the decree subject to modification was the product of litigation or stipulation or some combination of the two. In some cases, "a lesser showing of changed circumstances may support modifying a stipulated award than would be required to modify an adjudicated award." *See Peeples v. Peeples*, 2019 UT App 207, ¶ 15, 456 P.3d 1159 (quotation simplified). But the "adjudicated/stipulated dichotomy" is not "entirely binary," and "in assessing how much 'lesser' a showing might be required to satisfy the change-in-circumstances requirement, . . . courts should examine the origin of the order in question and analyze the extent to which the order—even if stipulated—reflects the result of robustly contested litigation aimed at ascertaining the best interest of the child." *See id.* ¶ 17 (quotation simplified).

*State v. Garcia-Lorenzo*, 2022 UT App 101, ¶ 58, 517 P.3d 424 (electing to consider additional raised and briefed issues, even though not necessary to the outcome of the appeal, "in an effort to offer guidance that might be useful on remand, where these issues are likely to arise again" (quotation simplified)), *cert. granted*, 525 P.3d 1263 (Utah 2022).

¶21    After a court has determined that a substantial and material change in circumstances has occurred, it must then proceed to analyze whether "a modification . . . would be an improvement for and in the best interest of the child." *See* Utah Code § 30-3-10.4(2)(b). In so doing, the court "*shall*, in addition to other factors the court considers relevant, consider the factors outlined in Section 30-3-10 and Subsection 30-3-10.2(2)." *Id.* § 30-3-10.4(2)(a) (emphasis added). Section 30-3-10 lists seventeen factors for consideration, before authorizing courts to consider "any other factor the court finds relevant." *Id.* § 30-3-10(2). And section 30-3-10.2(2)—applicable when the court is considering joint custody—sets forth another eight specific factors for consideration, before also authorizing consideration of "any other factor the court finds relevant." *Id.* § 30-3-10.2(2). Thus, courts in this situation are statutorily required to "consider," at least in some form, twenty-five enumerated factors, as well as "any other" relevant factor.

¶22    Of course, not all of these factors "are on equal footing," and a district court "generally has discretion to determine, based on the facts before it and within the confines set by the appellate courts, where a particular factor falls within the spectrum of relative importance and to accord each factor its appropriate weight." *Twitchell v. Twitchell*, 2022 UT App 49, ¶ 20, 509 P.3d 806 (quotation simplified). Some factors might not be relevant at all to

the family's situation, and others might be only tangentially relevant or will weigh equally in favor of both parents.[6]

¶23　Other factors, however, are of particular importance when considering a change in custody. For instance, "[a]t the critically important end of the spectrum, when the child is thriving, happy, and well-adjusted, lies continuity of placement." *Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491; *see also Larson v. Larson*, 888 P.2d 719, 722–23 (Utah Ct. App. 1994) (citing eight earlier Utah cases, and stating that "a factor of considerable importance in determining the best interest of children is the maintenance of continuity in their lives, and removing children from their existing custodial placement undercuts that policy"). Stated another way, when a court is "considering competing claims to custody between fit parents under the 'best interests of the child' standard, considerable weight should be given to which parent has been the child's primary caregiver," *Davis v. Davis*, 749 P.2d 647, 648 (Utah 1988), and "[e]xisting arrangements in which the child has thrived should be disturbed only if the court finds compelling circumstances," *Hudema*, 1999 UT App 290, ¶ 26. The importance of this factor is further highlighted by the fact that applicable statutes mention it twice: not only does section 30-3-10 list it as one of the seventeen general custody factors, *see* Utah Code § 30-3-10(2)(m) (listing as a factor "who has been the primary caretaker of the child"), but the modification statute specifies that, in considering whether to modify a custody order,

---

6. Even with factors not relevant to the situation or factors that do not move the needle one way or the other, a court is well-served to at least mention those factors in its ruling and briefly indicate that it deems them irrelevant or of equal weight for each party. By mentioning them, even if only to say that they are irrelevant, a court ensures that the parties—and, significantly, a reviewing court—will be able to tell that the court at least "consider[ed]" them. *See* Utah Code § 30-3-10.4(2)(a).

the court "shall give substantial weight to the existing . . . joint physical custody order when the child is thriving, happy, and well-adjusted," *id.* § 30-3-10.4(2)(c).

¶24 In its custody analysis, the district court discussed only three of the twenty-five applicable statutory factors. The court began by finding that "both parents are well and able parents to provide for the children," an apparent allusion to one of the general custody factors. *See id*. § 30-3-10(2)(c) (listing as a factor each "parent's capacity and willingness to function as a parent"). It then discussed, at some length, the important relationships the children had with extended family members on both sides in Cache County. *See id.* § 30-3-10(2)(l) (listing as a factor a child's "interaction and relationship with . . . extended family members"). The court also discussed Martinez's failure to notify Sanchez-Garcia of her move to Layton, and viewed that as a failure of communication. *See id.* § 30-3-10.2(2)(c)(i) (listing as a factor each parent's "co-parenting skills, including" the parent's "ability to appropriately communicate with the other parent"). But that was the sum total of the court's analysis; significantly, the court did not undertake any discussion of "who has been the primary caretaker of the child," *see id.* § 30-3-10(2)(m), a factor that is "[a]t the critically important end of the spectrum," *Hudema*, 1999 UT App 290, ¶ 26, and therefore entitled to "considerable weight," *Davis*, 749 P.2d at 648; *see also* Utah Code § 30-3-10.4(2)(c) (requiring courts considering modification to give "substantial weight" to existing joint custody arrangements in which "the child is thriving, happy, and well-adjusted").

¶25 At trial in this case, Martinez emphasized the "primary caregiver" factor, and put on evidence and made argument about that factor, asserting that she had always been the primary caregiver and that the children were doing well in her care, the move to Layton notwithstanding. Indeed, the custody evaluator testified that, in his view, "the children are very well established with both parents." We acknowledge that "[d]etermining which

factors the court must address in a given case, and to what degree, presents a tricky task," and that "courts are not required to render a global accounting of all evidence presented or to discuss all aspects of a case that might support a contrary ruling." *See Twitchell*, 2022 UT App 49, ¶ 21 (quotation simplified). But "where significant evidence concerning a particular factor is presented to the district court," especially where that factor is a critically important one, "findings that omit all discussion of that evidence" and of that factor "must be deemed inadequate." *Id.*

¶26    Again, we do not foreclose the possibility that a change of custody could be warranted here after a more fulsome analysis of the relevant custody factors, and our opinion should not be read as placing a thumb on the scale in either direction. But a more complete analysis is required here, in which the court should—as required by statute, *see* Utah Code § 30-3-10.4(2)(a)—"consider" the relevant factors, at least in some form, especially the ones the parties emphasize. In particular, given the court's heavy reliance on the importance of the children's relationships with extended family in Cache County, the court should engage with our previous case law holding that, "[w]hile the close proximity of . . . extended family is an appropriate factor for the court to consider, this, by itself, is insufficient to disturb a previously determined custody arrangement in which the children are happy and well-adjusted." *Larson*, 888 P.2d at 726.

## CONCLUSION

¶27    We find merit in Martinez's two arguments, and therefore vacate the court's modification order and remand for further proceedings in which the court should analyze at least the first of these issues, and possibly the second, anew. In so doing, the court should expressly consider whether a substantial and material change of circumstances has occurred and, if it concludes that such a change has in fact occurred, the court should then consider,

at least in some form, all the statutory factors relevant to custody modification, including the "primary caregiver" factor.

¶28    We also note that the court's renewed analysis, on remand, should be conducted "in present-tense fashion, as of the date of the hearing or trial, and should not only take into account the items discussed in this opinion but, in addition, should take into account, in some form, any material developments with regard to [the children] that have occurred since the last trial," *see In re J.J.W.*, 2022 UT App 116, ¶ 38, 520 P.3d 38, including (if applicable) whether Martinez has since moved back to Cache County.

———————