2015 UT App 278

## THE UTAH COURT OF APPEALS

LISA V. HIBBENS,
Appellant,
*v.*
MARK H. HIBBENS,
Appellee.

Opinion
No. 20140826-CA
Filed November 19, 2015

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 064903669

David Pedrazas, Attorney for Appellant

Platte Seth Nielson, Attorney for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE KATE A. TOOMEY and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

VOROS, Judge:

¶1      Lisa V. Hibbens (Wife) and Mark H. Hibbens (Husband) divorced in 2006. At the time of the divorce, Wife and Husband had three minor children. The divorce decree required, among other things, that Husband make the payments on the second mortgage on Wife's parents' house and pay child support. By 2013, Wife had retired the second mortgage on her parents' house, and two of the three children had reached the age of 18. Both parties asked the court to modify the decree. After a bench

_____

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

trial, the trial court found a substantial and material change in circumstances. It extinguished Husband's obligation to make payments on the retired mortgage, terminated his child support obligation with respect to the adult children, increased his child support for the minor child, and ordered Wife to repay child support overpayments. Wife appeals. We affirm.

BACKGROUND

*The Mortgage*

¶2    The 2006 divorce decree (the Decree) awarded Wife the marital home and required her to assume the mortgage on it. It also required Husband to assume the second mortgage on Wife's parents' house (the Mortgage). Wife's parents died the following month. She sold the marital home and moved into her parents' house. In February 2007, Wife told Husband that she planned to refinance the Mortgage, after which he would not have to make payments on it. Wife refinanced the Mortgage in January 2008 but did not inform Husband of the refinance. In the meantime, due to health issues, Husband moved in with Wife and her partner. During this time, Husband continued to make partial payments on the (by then retired) Mortgage, paid child support, paid Wife some rent, and contributed to the utilities.

¶3    When Husband learned in December 2009 or January 2010 that Wife had refinanced the Mortgage, he stopped making payments on it. From the time of the refinance until Husband stopped making the Mortgage payments, he paid Wife $9,600 toward the Mortgage. In August 2010, Husband's then-fiancée exchanged Facebook messages with Wife. Wife acknowledged that she told Husband he did not have to pay the Mortgage:

> [Husband] was court ordered to pay off the loan . . . on my parents' house . . . . The payment was $575.00 with a balance of $45,000. I told

> [Husband] he does not have to pay that off, I will. He accepted and no longer has to make that payment.

Wife testified at trial that she only intended to relieve Husband of his obligation to pay the Mortgage temporarily. In December 2010, Wife emailed Husband and asked if he would "resume paying the $575 mortgage payment." Husband replied, "What mortgage payment, it got rolled into the refinance. You said once you did that I was no longer responsible."

¶4    The trial court found that a substantial and material change in the parties' circumstances had occurred since entry of the Decree. The court concluded that the "parties did not anticipate an assumption of the [Mortgage] by the party who had not previously been ordered to pay." The court found Husband's testimony regarding the Mortgage credible and found Wife's testimony regarding the Mortgage not credible. The court explained that the message Wife sent to Husband's then-fiancée made no qualifications regarding Husband's obligation for the Mortgage and did not support her testimony. In light of these facts, the court ordered that Husband "is no longer required to pay any sums to [Wife] relating to the [Mortgage]."

*Child Support*

¶5    At the time of their divorce, Wife and Husband had three minor children. Wife's average monthly income was $1,925.21; Husband's average monthly income was $4,158.33. The Decree required Husband to "pay $962.00 per month in child support in conformance with the Utah Child Support guidelines." The Decree also provided that Husband's child support obligation would continue "until all children are no longer attending college." Husband and Wife both acknowledged at trial that they were unaware of this provision at the time of the divorce.

¶6    By the time the court issued its decision on the parties' petitions to modify, only one of the three children remained a minor. The other two children had turned 18 and graduated from high school. Neither had attended college. One had married, and neither had any special needs.

¶7    Since the divorce, Wife had become permanently disabled. As a result, the trial court found that Wife had a monthly income of $895 per month. Thus, the trial court found Wife's monthly income suffered a 53% decrease, constituting a material change under Utah law. The trial court also found that Wife's disability constituted a permanent condition, "which materially changes her employment potential and her ability to earn income." Finally, the trial court concluded that because the Decree contemplated that the children would attend college, the fact that neither of the adult children had attended college constituted a substantial and material change in circumstances.

¶8    Based on these changes in the parties' circumstances, the trial court modified Husband's child support obligation. The court first determined that "[t]he child support provision in the Decree is unusual and constitutes a 'deviated' child support order." The trial court terminated Husband's child support obligations with respect to the two adult children. The court increased Husband's child support for the minor child to $517 and ordered that obligation to continue until the child turns 18 or graduates from high school, whichever occurs later. The court made its child support modifications effective as of February 2013, the date the parties filed their cross-petitions. Accordingly, it awarded Husband $7,565, "representing the overpayment of child support from February 2013 through June 2014."

## ISSUES ON APPEAL

¶9    Wife raises two issues on appeal. First, she contends that the trial court erred in relieving Husband of his obligation to pay

the Mortgage. Second, she contends that the trial court erred in modifying Husband's child support obligation.

ANALYSIS

I. The Mortgage

¶10    Wife contends that the trial court erred in terminating Husband's obligation to pay the Mortgage. Specifically, she argues that the trial court could terminate Husband's obligation to pay the Mortgage only if the court found that Wife "intentional[ly] and distinctly" waived her right to receive payments. Husband responds that the trial court's ruling "was not dependent on the trial court's application of the law on waiver. It was based upon the normal standard applied in divorce modification cases—whether a substantial change in circumstances has occurred since the entry of the decree that supports a modification of the decree."

¶11    We agree with Husband. This round of litigation arose from the parties' cross-petitions to modify the Decree based on a substantial change in circumstances. The trial court did find that Wife told Husband that he no longer had to make payments on the second mortgage. But, as explained below, the court based its modification of the Decree not on waiver, but on a finding of a substantial and material change in the parties' circumstances. Accordingly, we consider whether a substantial change in circumstances supports the trial court's modification of the Decree.

¶12    "To succeed on a petition to modify a divorce decree, the moving party must first show that a substantial material change of circumstances has occurred since the entry of the decree and not contemplated in the decree itself." *Bolliger v. Bolliger*, 2000 UT App 47, ¶ 11, 997 P.2d 903 (emphasis, citation, and internal quotation marks omitted). "The determination of the trial court

that there [has or has not] been a substantial change in circumstances . . . is presumed valid, and we review the ruling under an abuse of discretion standard." *Id.* ¶ 10 (alteration and omission in original) (citation and internal quotation marks omitted). An appellate court "can properly find abuse [of discretion] only if no reasonable person would take the view adopted by the trial court." *Goggin v. Goggin*, 2011 UT 76, ¶ 26, 267 P.3d 885 (citation and internal quotation marks omitted).

¶13 Here, the trial court found that "[t]he parties did not anticipate an assumption of the [Mortgage] obligation by the party who had not been previously ordered to pay the debt." Further, the trial court found Wife's "refinance of the [Mortgage] obligation constitutes a substantial and material change since the entry of the [D]ecree which supports modification of the [D]ecree." Thus, the trial court ruled that Husband "should no longer be obligated to pay [Wife] on the [Mortgage] obligation, or to reimburse her for payments she made on the refinance of that obligation."

¶14 The court also believed Husband's testimony that Wife had told him she planned to refinance the Mortgage, after which he would no longer have to pay the Mortgage; the court disbelieved Wife's testimony that she intended to relieve Husband of his obligation to pay the Mortgage only temporarily. While these findings might lend support to a finding of waiver, in context they demonstrate that the parties themselves viewed the sale of the house and the payoff of the Mortgage as material circumstances justifying a modification of Husband's mortgage obligation. Wife challenges none of these findings on appeal; accordingly, "we accept these findings as true in our analysis on appeal." *See D'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 24, 147 P.3d 515.

¶15 Based on the trial court's factual findings, we conclude that the trial court did not abuse its discretion in concluding that a material and substantial change occurred justifying a

modification of the Decree. Accordingly, we affirm the trial court's order terminating Husband's obligation to pay the Mortgage.

## II. Child Support

¶16 Wife contends that "the trial court's modification of [Husband's] child support obligation was incorrect." She challenges the trial court's modification in two respects. First, she challenges the termination of Husband's child support obligation with respect to the two older children. She argues that "the Court failed to make any findings sufficient [to] justify[] a modification of the child support termination date based upon a change in circumstances and in the best interests of the child." Second, Wife challenges the amount of Husband's new child support obligation. She argues that "modifying child support in this case by lowering child support based upon [her] reduction in income based upon her disability is unconscionable and not in the best interest of the child."

¶17 "In reviewing child . . . support proceedings, we accord substantial deference to the trial court's findings and give it considerable latitude in fashioning the appropriate relief. We will not disturb that court's actions unless the evidence clearly preponderates to the contrary or there has been an abuse of discretion." *Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985) (per curiam).

### A. The Adult Children

¶18 The Utah Child Support Act defines *child* generally as an unemancipated son or daughter under 18, in high school or incapacitated from earning a living:

"Child" means:

(a)     a son or daughter under the age of 18 years who is not otherwise emancipated, self-

supporting, married, or a member of the armed forces of the United States;

  (b) a son or daughter over the age of 18 years, while enrolled in high school during the normal and expected year of graduation and not otherwise emancipated, self-supporting, married, or a member of the armed forces of the United States; or

  (c) a son or daughter of any age who is incapacitated from earning a living and, if able to provide some financial resources to the family, is not able to support self by own means.

Utah Code Ann. § 78B-12-102(7) (LexisNexis 2012). Consistent with this definition, the Act provides that, unless a child support order provides otherwise, when a child turns 18 or graduates from high school, the child support obligation "automatically adjust[s]," excluding that child from the calculation:

> When a child becomes 18 years of age or graduates from high school during the child's normal and expected year of graduation, whichever occurs later . . . the base child support award is automatically adjusted to the base combined child support obligation for the remaining number of children due child support . . . unless otherwise provided in the child support order.

*Id.* § 78B-12-219(1). However, if "the order deviates from the guidelines, automatic adjustment of the order does not apply and the order will continue until modified by the issuing tribunal." *Id.* § 78B-12-219(3).

¶19 Furthermore, "courts in divorce actions may order support to age 21." *Id.* § 15-2-1 (2013). Thus, the court "'has power to order continued support until age 21 when it appears to be necessary and when the court makes findings of any

special or unusual circumstances to justify the order.'" *Thornblad v. Thornblad*, 849 P.2d 1197, 1199 (Utah Ct. App. 1993) (quoting *Harris v. Harris*, 585 P.2d 435, 437 (Utah 1978)).

¶20   Here, because the Decree provided that child support "shall continue until all of the children are no longer attending college," the trial court determined this to be "a 'deviated' child support order." Thus, under Utah law, the order would not automatically adjust as the children became emancipated; rather, it would "continue until modified by the issuing tribunal." Utah Code Ann. § 78B-12-219(3).

¶21   The issuing tribunal in this case modified the child support order with respect to the parties' adult children. The trial court found that these children are not under the age of 18 years, that one is married, and that "[n]either of the two emancipated children is disabled or struggling with any special needs that would justify extended child support for them . . . beyond high school graduation or turning 18 years of age." Accordingly, neither qualifies as a child as defined by the Utah Child Support Act. In addition, the court found that neither had ever attended college.

¶22   Given these findings, we cannot conclude that the trial court failed to make required findings or otherwise abused its discretion in terminating Husband's obligation to pay child support for the two adult children. The children both turned 18 and no longer qualified as children under the Act. The court had power to order support to continue until age 21 based on finding "special or unusual circumstances to justify the order." *Thornblad*, 849 P.2d at 1199 (citation and internal quotation marks omitted). But the court found no such special or unusual circumstances, and Wife presented no evidence to support such a finding. Finally, we cannot agree that the trial court's order was not in the best interest of any children. As explained above, the adult children at issue here are not, for purposes of the Utah Child Support Act, children.

¶23    Accordingly, we affirm the trial court's order terminating Husband's child support obligation for his adult children.

B.    The Minor Child

¶24    Under the Utah Child Support Act, "A parent . . . may at any time petition the court to adjust the amount of a child support order if there has been a substantial change in circumstances." Utah Code Ann. § 78B-12-210(9)(a) (LexisNexis 2012). A substantial change in circumstances may include, among other things, "material changes of 30% or more in the income of a parent," or "material changes in the employment potential and ability of a parent to earn." *Id.* § 78B-12-210(9)(b)(iii)–(iv).

¶25    Taking the best interests of the child into account, a court tasked with reviewing a petition to modify the amount of a child support order first determines whether a substantial change has occurred. *Id.* § 78B-12-210(9)(c)(i). Then, if a substantial change has occurred, the court determines "whether the change results in a difference of 15% or more between the payor's ordered support amount and the payor's support amount that would be required under the guidelines." *Id.* § 78B-12-210(9)(c)(ii). Next, if "there is a difference of 15% or more" and "the difference is not of a temporary nature," the court shall adjust the child support amount in conformance with the guidelines. *Id.* § 78B-12-210(9)(c)(iii). "Finally, when explaining the outcome of a modification petition, the court must make findings on all material issues, and its failure to delineate what circumstances have changed and why the changes support the modification . . . constitutes reversible error unless the facts in the record are clear, uncontroverted and only support the judgment." *Diener v. Diener*, 2004 UT App 314, ¶ 7, 98 P.3d 1178 (citation and internal quotation marks omitted).

¶26    The trial court followed these requirements to the letter. In considering an adjustment in the amount of child support for

the minor child, the court found Wife's income changed from $1,925 per month to $895 per month. The court found the change in Wife's income amounted to a 53% decrease and thus constituted a substantial change—i.e., a change of more than 30% in income. The court also found that Wife's disability constituted a "permanent condition which materially changes her employment potential and her ability to earn income." This too, the court concluded, constituted a substantial change under Utah law.

¶27 The court next determined that Wife's change in income, together with the emancipation of two of the children, resulted in a 15% or more change in Husband's child support obligation. *See* Utah Code Ann. § 78B-12-210(9)(c)(ii). Given the difference of at least 15%, and given the court's finding that the decrease in Wife's income was not temporary, the court adjusted Husband's child support obligation. Husband's child support obligation for the minor child effectively increased under the court's order. Because the trial court followed the statute to the letter and clearly delineated the facts underlying the change in circumstances, we cannot agree that it abused its discretion in increasing Husband's child support obligation for the minor child.

¶28 Nevertheless, Wife argues that the trial court's order "modifying the child support amount failed to consider the best interests of the children." Wife continues, "'Clearly a decrease in child support from the guideline amount has an obvious potential to negatively affect the best interest of the child.'" (Quoting *Cantrell v. Cantrell*, 2013 UT App 296, ¶ 14 n.5, 323 P.3d 586.) Wife goes on to assert that "modifying child support in this case by lowering child support based upon [her] reduction in income . . . [and] disability is unconscionable and not in the best interest of the child."

¶29 If the trial court had actually reduced the child support obligation with respect to the minor child or otherwise deviated

from the guidelines, we might agree. But it did not do so. True, the Husband's total child support obligation decreased from $962 (for three children) to $517 (for one child). But the court based the overall decrease not on Wife's "reduction in income," as she now claims, but on the two older children's emancipation. We have already concluded that the trial court did not abuse its discretion by discontinuing child support for the adult children. *See supra* ¶¶ 20–23. And we similarly cannot say that the court abused its discretion by setting the remaining minor child's support in conformance with the guidelines.[2]

¶30    Finally, Wife argues that the trial court failed to consider "the best interests of the child and/or make findings of a substantial change in circumstances to justify a modification of the termination date of the child support obligation." Specifically, she asserts that "[t]he court failed to consider whether it was in the best interest of the children to modify[] the termination date of the child support and whether the youngest child would be attending college." Again, we do not agree.

¶31    The trial court found that "[t]he Decree does not address the intent of the parties regarding payment for college expenses for any of the children." Thus, the trial court concluded "[t]he parties are left to resolve between themselves as to the extent they will help their children with college expenses or with support beyond the age of 18 and the graduation from high school." Further, our supreme court has explained "that the

---

2. To the extent Wife's argument challenges the sufficiency of the trial court's findings with respect to the best interests of the child, we reject her argument as unpreserved. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 50–51, 99 P.3d 801 (declining to consider the appellant's sufficiency challenge where the appellant raised the sufficiency issue for the first time on appeal).

court has power to order continued [child] support until age 21 *when it appears to be necessary and when the court makes findings of any special or unusual circumstances to justify the order*." *Harris v. Harris*, 585 P.2d 435, 437 (Utah 1978) (emphasis added).

¶32　Here, the court's findings do not reveal any necessity or special or unusual circumstances that would have justified extending the minor child's child support beyond the age of 18. The fact that Husband might have been obligated to pay child support for the adult children had they chosen to attend college does not constitute such a circumstance. As a result, we cannot conclude the trial court abused its discretion, and we accordingly affirm.

## CONCLUSION

¶33　Because the trial court did not abuse its discretion in terminating Husband's obligation to pay the Mortgage, or in modifying Husband's child support obligations, we affirm.

———————————