2021 UT App 5

# THE UTAH COURT OF APPEALS

KELLEY HARPER,
Appellee,
*v.*
DAMON M. HARPER,
Appellant.

Opinion
No. 20190351-CA
Filed January 14, 2021

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 104402558

D. Grant Dickinson, Attorney for Appellant

Anthony C. Kaye, Melanie J. Vartabedian, Allison G.
Belnap, and Nathan R. Marigoni, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1 Damon M. Harper (Harper) appeals the district court's order denying his petition to modify custody. He contends that the court should have concluded that circumstances had changed substantially, justifying a modification, based on temporary conditions that had been resolved by the time of trial and based on the temporary custody arrangement that was in place during the proceedings on his petition. We affirm.

BACKGROUND[1]

¶2     In 2012, Harper divorced Kelley Harper, who is now known as Ian Giles (Giles).[2] Harper and Giles have one child (Child). After trial, the court awarded joint legal custody to both parents and awarded primary physical custody of Child to Giles. The divorce decree further provided that "both parties shall be completely open about where [Child] will be, where she can be reached, and who will be providing substitute care for [her]."

¶3     One day in October 2015, Giles failed to pick up Child from school. The school then contacted Harper, but before Harper arrived—and unbeknownst to Harper—Giles had arranged for a proxy to pick up Child. Giles did not answer Harper's subsequent calls and was not home to inform Harper of Child's whereabouts, prompting Harper to call the police. Giles did not thereafter offer an explanation or disclose why they had not kept Harper informed.

¶4     In the spring of 2016, Harper learned that Child had accrued absences and tardies at school. He also learned that during the October 2015 incident, Giles was at the hospital and that some of Giles's acquaintances were concerned for Giles's health.

¶5     In April 2016, Harper filed a petition to modify the divorce decree, seeking, as relevant here, primary custody of

---

1. We recite the facts consistent with the district court's findings of fact. *See Nebeker v. Orton*, 2019 UT App 23, ¶ 2 n.1, 438 P.3d 1053. On appeal, Harper does not take issue with the court's factual findings.

2. Giles's brief informs us that Giles uses they/them/their pronouns. We therefore refer to Giles using their preferred pronouns.

Child. Relying chiefly on the October 2015 incident, Child's school attendance problems, and concerns about Giles's health, Harper asserted that "a material and substantial change in circumstances" existed to justify modifying the divorce decree. Harper simultaneously applied for a temporary restraining order that would award him immediate primary care and custody of Child.

¶6     At a hearing on April 18, 2016, a domestic relations commissioner determined that a temporary modification of custody was warranted. The commissioner thus awarded temporary custody of Child to Harper and ordered that Giles would have supervised parent-time with Child. A final amended order from the hearing was entered on May 6, 2016 (the Temporary Order). Giles did not timely object to this ruling, and Child remained in Harper's custody. Thus, the Temporary Order—which, as the district court later explained, was "never intended to extend beyond a trial on the merits of the petition to modify the original decree"—remained in place until the petition to modify was tried to the bench in November 2018.[3]

¶7     During trial, Harper argued that a material and substantial change in circumstances had occurred since the original custody award was entered because Giles "has become less capable of caring for [Child] as a result of a degradation" in Giles's health and that these health issues had "negative effects" on Child, including increased tardies and less success in school. The district court ultimately rejected Harper's argument that there was a change in circumstances.

_____

3. During the more than two-year period between entry of the Temporary Order and trial, Giles attempted to vacate the Temporary Order and moved to dismiss the petition to modify, but those efforts were unsuccessful.

¶8 The court found that although Giles acknowledged experiencing temporary health issues between the fall of 2015 and the spring of 2016, Giles credibly testified that their health problems resulted from "an unanticipated reaction to prescribed medication" and that they improved when their doctors modified their prescription. The court similarly noted that one doctor concluded that Giles's health concerns during that period "were situational—related to events." It also found that Giles was "capable of feeding, loving, and caring" for Child and that nothing in Giles's life or parenting style was "threatening or potentially harmful" to Child. Additionally, the court found Harper had not produced sufficient evidence that Giles's health concerns had "significantly or substantially inhibited [their] ability to care for and meet [Child's] needs" or that Giles "lack[ed] the sufficient human, monetary, or other resources to care for [Child]." The court further found that both Harper and Giles have "an uncommon willingness to see to [Child's particular] needs." And even though the ability of the parents to communicate openly about Child's care and location was "suppressed for a time" as Giles dealt with personal problems, "that inability is now resolved."

¶9 The court then determined that there was no showing of the requisite change in circumstances to justify modifying the divorce decree. It reasoned that the "permanence of an alleged changed circumstance matters" given that "[p]ersons become ill occasionally and no one is permanently [in] best" health. For example, and in line with public policy, the court observed that "it is expected in periods of temporary disability that a joint parent will step in to see to the best interests of a child." But if "such a circumstance were to justify a reconsideration of custody . . . , it would discourage openness, cooperation, and communication that is core to expected behavior under joint custody orders." The court then determined that the circumstances from the fall of 2015 to the summer of 2016 "were concerning" and that "[i]mmediate action to protect" Child in

"the form of [the Temporary Order] was justified." Yet the court found that "not long after the flurry of activity in 2016, [Giles] recovered to the same capacities that resulted in an order of primary physical custody at the time of divorce in 2012."

¶10 Because Harper "failed to establish that a material, substantial change of circumstances has occurred which would justify setting aside the conclusion of [the court] from 2012," the court concluded that "[f]urther consideration of [Child's] best interests is therefore not possible under Utah law." The court accordingly denied Harper's petition to modify the divorce decree. Consequently, although Child had remained in Harper's custody from the time of the Temporary Order until trial—a period lasting around two and a half years—the court ordered that the custody arrangement under the divorce decree would be restored and "primary custody and care for [Child] will transition back to [Giles]." Harper appeals.

ISSUE AND STANDARD OF REVIEW

¶11 Harper contends that the district court erred in declining to determine that a change in circumstances had occurred that would justify modifying the custody arrangement in the divorce decree. We review the court's "ultimate determination regarding the presence or absence of a substantial change in circumstances" for an abuse of discretion. *Peeples v. Peeples*, 2019 UT App 207, ¶ 11, 456 P.3d 1159. "An appellate court can properly find abuse of discretion only if no reasonable person would take the view adopted by the trial court." *Hibbens v. Hibbens*, 2015 UT App 278, ¶ 12, 363 P.3d 524 (cleaned up).

ANALYSIS

¶12 While not challenging the court's factual findings, Harper contends that the district court erred in concluding that he had

not established a material and substantial change in circumstances. Harper's challenge has two parts. First, Harper argues that Giles's health issues from the fall of 2015 through the spring of 2016 did in fact constitute a material change in circumstances and that the district court "failed to consider" those concerns. Second, Harper argues that "the trial court failed to consider the 2.5 years [Child] has spent in the care of Harper as part of the changed circumstances."

¶13 The Utah Code requires that a "court order modifying . . . an existing joint legal custody or joint physical custody order shall contain written findings that: (i) a material and substantial change of circumstance has occurred; and (ii) a modification of the terms and conditions of the order would be an improvement for and in the best interest of the child." Utah Code Ann. § 30-3-10.4(2)(b) (LexisNexis 2019).[4] Under this two-step approach, "a court first must decide 'whether there are changed circumstances warranting the exercise of the court's continuing jurisdiction to reconsider the custody award.'" *Doyle v. Doyle*, 2011 UT 42, ¶ 24, 258 P.3d 553 (quoting *Hogge v. Hogge*, 649 P.2d 51, 53 (Utah 1982)). "Only if circumstances have materially and substantially changed may the court proceed to the second step—a determination 'as to the manner in which custody should be modified, if at all,' based on a *de novo* review of the child's best interests."[5] *Id.* (quoting *Hogge*, 649 P.2d at 53). The

---

4. Because recent statutory amendments since the relevant time are not material in this case, we cite the current version of the Utah Code.

5. Our two-step approach requires "only analytical—and not formal procedural—bifurcation," recognizing that "evidence supporting changed circumstances is often the same evidence that is used to establish the best interests of the child." *Doyle v. Doyle*, 2011 UT 42, ¶¶ 28, 33, 258 P.3d 553 (cleaned up).

district court's determination "that there has or has not been a substantial change in circumstances is presumed valid" and is reviewed only for an abuse of discretion. *Hibbens v. Hibbens*, 2015 UT App 278, ¶ 12, 363 P.3d 524 (cleaned up).

¶14    The change-in-circumstances requirement serves several purposes. *Doyle*, 2011 UT 42, ¶ 25. "First, because a custody decree is predicated on a particular set of facts, that decree is res judicata," and "the threshold requirement of changed circumstances thus prevents an unnecessary drain on judicial resources by repetitive litigation of the same issue when the result would not be altered." *Id.* (cleaned up). Second, the requirement "protects the custodial parent from harassment by repeated litigation." *Id.* (cleaned up). Third, it also "protects the child from 'ping-pong' custody awards." *Id.* (cleaned up).

¶15    To satisfy the change-in-circumstances threshold requirement, "the party seeking modification must demonstrate (1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody." *Hogge*, 649 P.2d at 54. Where this "burden of proof is not met, the trial court will not reach the second step, the petition to modify will be denied, and the existing custody award"—here, the divorce decree's award of primary custody to Giles—"will remain unchanged." *See id.*[6]

---

6. Unlike an adjudicated custody decree, such as the one in this case, a stipulated custody decree "is not necessarily based on an objective, impartial determination of the best interests of the child, and therefore the res judicata policies underlying the changed-circumstances rule are at a particularly low ebb." *Peeples v. Peeples*, 2019 UT App 207, ¶ 15, 456 P.3d 1159 (cleaned up). Thus, "in some cases, a lesser showing of changed

(continued…)

¶16    Harper first argues that Giles's health concerns, present at the time he filed his petition to modify custody, satisfied the change-in-circumstances requirement. We disagree. Despite Giles's admitted health issues from late 2015 to early 2016, the district court found that those problems were temporary and that, at the time of trial, Giles had "recovered to the same capacities that resulted in an order of primary physical custody at the time of divorce." Given these unchallenged findings, the court essentially determined that the facts as they existed at the time of trial in 2018 mirrored the facts as they existed at the time of the divorce decree in 2012. Thus, in the court's view, as compared to the time of the divorce decree, there had *not* been a change in the circumstances on which the previous custody award was based. *See id.*; *see also Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984) ("[C]ustody placements, once made, should be as stable as possible unless the factual basis for them has completely changed."). We do not see an abuse of discretion in the court's decision.

¶17    Second, Harper argues that the court should have concluded that circumstances had changed based on the fact that the Temporary Order giving him primary custody of Child had been in place for around two and a half years during the course of these proceedings. Again, we disagree. The Temporary Order was only that—temporary. *See Tucker v. Tucker*, 910 P.2d 1209, 1215 (Utah 1996). As a temporary custody order, it was "effective

---

(…continued)
circumstances may support modifying a stipulated award than would be required to modify an adjudicated award." *Id.* (cleaned up). For the same reasons, in change of custody cases involving a nonlitigated custody decree, the changed-circumstances rule "must not be so inflexible as to categorically foreclose examination of the child's well-being." *Taylor v. Elison*, 2011 UT App 272, ¶ 14, 263 P.3d 448.

only until a fully informed custody determination [could] be made at a final hearing." *Id.* Indeed, the court here "never intended [the Temporary Order] to extend beyond a trial on the merits of the petition to modify." *See generally* Utah R. Civ. P. 106 (permitting the court to order temporary modifications to custody during the pendency of a petition to modify). We agree with Giles that, unlike a permanent custody order, a temporary custody order is modifiable without a showing of a substantial and material change in circumstances. *See Tucker*, 910 P.2d at 1215–16.

¶18 Additionally, Harper's emphasis on the Temporary Order misplaces the proper focus of the change-of-circumstance inquiry. Generally, "the asserted change must have some material relationship to and substantial effect on parenting ability or the functioning of the presently existing custodial relationship and not on the parenting of the noncustodial parent."[7] *Doyle,* 2011 UT 42, ¶ 41 (cleaned up). Harper's custody of Child under the Temporary Order does not alone demonstrate a change in circumstance bearing on Giles's parenting ability or the functioning of the custodial relationship established under the divorce decree. *See id.* Thus, the district court did not abuse its discretion by declining to give more weight to the Temporary Order.

¶19 We recognize that the district court's denial of Harper's petition to modify resulted in Child being returned to Giles's custody after she spent over two years in Harper's care under

---

7. There is an exception to this general rule. Namely, "where the original custody award was subject to or apparently conditioned upon an improvement in the noncustodial parent's circumstances, a court may properly consider those changes in deciding to reopen the original custody determination." *Doyle,* 2011 UT 42, ¶ 41 (cleaned up). This exception is not at issue in this case.

the Temporary Order as this case was pending. While we appreciate that this shift may have been disruptive at that juncture, the law is clear that "[i]t is only where circumstances have substantially changed that the trial court may reopen a litigated custody order and reevaluate the best interests of the child *de novo*." *Id.* ¶ 38. Here, the district court observed that "[w]ere it to go there, the consideration of [Child's] best interests . . . would be a difficult, close contest." But our supreme court has instructed that "[e]ven an overwhelming case for the best interest of the child could not compensate for a lack of proof of a change in circumstances." *Id.* In light of Harper's failure to establish a material and substantial change in circumstance that would justify modifying the divorce decree's custody award, the district court correctly concluded that "further consideration of [Child's] best interest is not possible under existing Utah law." *See id.* ¶¶ 24, 38.

## CONCLUSION

¶20   The district court did not abuse its discretion in determining that there had not been a substantial and material change in circumstances. Accordingly, we affirm.

———