**2024 UT App 84**

THE UTAH COURT OF APPEALS

JANETTE CORN,
Appellee,
*v.*
BLAKE GROCE,
Appellant.

Opinion
No. 20220526-CA
Filed May 31, 2024

Second District Court, Farmington Department
The Honorable Ronald G. Russell
No. 194700657

Alexandra Mareschal and Julie J. Nelson,
Attorneys for Appellant

Emily Adams, Freyja Johnson, and William M.
Fontenot, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Blake Groce (Father) appeals the district court's rejection of his petition to modify parent-time. He also challenges the court's calculation of Janette Corn's (Mother) net income for child support purposes. Because the court did not abuse its discretion when ruling on either issue, we affirm.

BACKGROUND

¶2 Father and Mother are the parents of twin daughters (the Children). In 2015, the parties agreed to joint legal and physical

custody of the Children, with Father exercising parent-time four overnights during a two-week period, and the district court entered a decree reflecting this agreement (Original Decree). In 2016, Father moved out of state for work. The following year, Father began dating stepmother (Stepmother); the two married in 2019.

¶3      In 2019, due in part to Father's relocation out of state, Mother petitioned to modify the Original Decree, seeking sole physical custody of the Children subject to Father's parent-time. Father responded to the petition and filed a counterpetition seeking orders related to the Children's healthcare. Father did not ask for a change in parent-time.

¶4      Shortly thereafter, the parties entered into a stipulation (2019 Stipulation). By its express terms, the 2019 Stipulation did "not resolve the competing petition and counterpetition to modify custody." It did, however, set forth a "temporary" parent-time schedule that would increase Father's parent-time upon his planned relocation to Utah. The parties agreed that upon Father's relocation, the parties would follow, "on a temporary basis until further agreement of the parties or further order of the Court," the parent-time schedule in Utah Code section 30-3-35.1. Pursuant to that schedule, Father would exercise five overnights during a two-week period (an increase of one overnight). The parties further agreed that if the increased parent-time schedule were to take effect, they would adhere to it "for at least six (6) months." At that point, if either party wanted to change parent-time, the party could submit a written request communicating the desired change, after which the parties would attend mediation. And if the parties had not "otherwise reach[ed] an agreement regarding a permanent parent-time order" after Father had exercised the increased schedule for "six (6) months and thereafter," either party could "request mediation in writing."

¶5 In August 2019, Father made the move to Utah and began exercising his increased parent-time. The following year, the district court entered the 2019 Stipulation as an order (2020 Order).

¶6 In August 2020, Father filed a petition to modify the custody and parent-time awarded in the 2020 Order. In this petition, Father sought sole physical and legal custody of the Children based on circumstances that he alleged had changed since the entry of the 2020 Order. The changes included the decreased quality of education at the Children's school, Father's desire to teach the Children religious values, Father's work trips and the right of first refusal created a "disconnect" between the Children and Stepmother, the parties' disagreement over the Children's vaccines, Mother's changing financial situation, and Mother's failure to use a Google calendar. Most notably, Father also alleged that Mother exhibited "inappropriate behaviors" in front of the Children, causing them mental health issues that required counseling, which Mother had refused to allow. In a separate motion, Father asked the court to appoint a custody evaluator to aid the court in making a custody determination. The court granted Father's request and appointed an evaluator (Evaluator).

¶7 As the case proceeded, the district court held several pretrial conferences to determine which issues were to be certified for trial. After much confusion on both sides, the court entered a pretrial order stating that the issues certified for trial were intended to resolve (1) Mother's 2019 petition to modify the Original Decree, (2) Father's 2019 counterpetition to modify the Original Decree, and (3) Father's petition to modify the 2020 Order. But at the final pretrial conference a few months later, Mother informed the court that she was "not pursuing" her 2019 petition to modify.

¶8 Shortly before trial, Father submitted a trial memorandum to the district court addressing the issues certified for trial. Regarding "[p]hysical custody/parent time," Father asserted that "[j]oint physical custody is appropriate" and requested that the court award him either "220 overnights to Mother's 145 overnights" or "equal parent time."[1] And regarding "[l]egal custody/terms of parenting plan," Father asserted that "[j]oint legal custody is appropriate" and requested that the court implement a parenting plan filed by Father. Father also requested changes to child support.

¶9 In response to Father's request to change child support, Mother filed an updated financial declaration. Mother is a self-employed realtor. In her financial declaration, Mother listed her monthly income as $6,599 ($6,000 salary plus $599 child support), and her annual salary as "approximately" $72,000. Mother supported the declaration with her 2020 tax return and three months of bank statements. The tax return listed $106,408 in gross income and $30,745 of expenses, resulting in a net income of $75,663. Those expenses included advertising, vehicle expenses, insurance, office expenses, office rent, office supplies, bank charges, membership dues and fees, education costs, internet fees, telephone charges, referral fees, software fees, website charges, equipment fees, and broker fees.

---

1. Father's requested change would have increased his number of overnights from 130 to 220 and would have decreased Mother's overnights from 235 to 145. Father's alternative request for equal parent-time would have also greatly changed the number of overnights awarded to each parent, with Father receiving 182 overnights and Mother receiving 183 overnights. These requests sought significant changes in the parties' child-care arrangement, even though these requests were, technically speaking, requests for changes to "parent-time" and not to "physical custody." *See McFarland v. McFarland*, 2021 UT App 58, ¶ 36, 493 P.3d 1146.

¶10   A two-day bench trial was held in March 2022. At the outset of the trial, Mother asked for clarification with respect to what relief Father was requesting. She explained that Father had requested sole physical custody in his petition to modify but that he had requested only a change to parent-time in his trial memorandum. She asserted the difference was relevant because "based on what [Father's] requesting, either just additional parent-time or actually sole legal custody . . . , then that would change the showing that he needs to make."

¶11   In response, Father reiterated his position, as set forth in his memorandum, that he had "changed [his] position from asking for sole custody" and was seeking only a change in parent-time. Mother objected to "an amendment to the petition to modify if now [Father is] requesting just a change in parent-time" because that had "not been pleaded" and it was "not going to be tried by consent." The court "note[d] [Mother's] objection" but concluded that the trial could proceed because Father's requested relief "include[d] a number of items" and was "fairly broad," which would allow the court to order relief as it "deem[ed] appropriate." The court concluded by directing the parties "to present [their] evidence regarding the substantial change in circumstances so that can be considered."

¶12   Over the course of the trial, the district court heard testimony from Evaluator, the parties, and multiple other individuals involved in the Children's lives. The parties also presented evidence regarding their monthly incomes.

¶13   Evaluator testified about what custody changes would be in the best interest of the Children; she specifically did not discuss whether there had been a change in circumstances. Evaluator opined that since "the very beginning," the parties "had difficult communication," they were "at odds about parent-time [and] about the role of each parent," and Mother "saw herself as the primary person who would care for the [C]hildren and make

decisions about them." She expressed that both parents had "some fault in the coparenting difficulties."

¶14 Regarding Mother, Evaluator did not observe any "intense and sudden mood swings," as had been alleged by Father. She noted that Mother "was quite open and forthright about the fact that she lost her temper with the [C]hildren sometimes" but concluded that the behavior was "[n]ot out of the ordinary." Evaluator further expressed that she had not observed Mother acting in an "irrational" manner. Regarding Father, Evaluator observed that in "some circumstances" Father's actions were not proportionate and that on occasion, he had been "overly concerned about relatively small things."

¶15 Evaluator recommended that the Children have "equal amounts of time with both parents," noting that although the Children "struggle with some anxiety and some stress about parental conflict," overall they "are thriving with both parents" and "have a good relationship with both parents." She opined that "both parents demonstrate appropriate decision-making in terms of the [C]hildren, are good role models for the [C]hildren, and lead an appropriate lifestyle."

¶16 Concerning child support and income, Father introduced Mother's 2020 tax return as an exhibit. Relying on that document, Mother testified that her 2020 net income was "right around $76,000." She explained that she has "lots of business expenses," totaling around "30-something-thousand dollars," which generally include a monthly Multiple Listing Service fee, a monthly payment to her brokerage, a monthly payment for office rent, yearly dues, and mileage. In addition, Mother noted she pays for trainings, continuing education classes, and seminars; open house expenses; signs; and general office expenses such as paper, business cards, and photos. Lastly, she testified that she deducts a portion of her cell phone and home internet. Father did not object at any point during this portion of Mother's testimony.

¶17 At the close of the trial, the district court issued an oral ruling, which it later reduced to writing. The court declined to change the custody status or to alter parent-time, but it agreed to modify child support payments. Regarding custody and parent-time, the court first noted that although Father sought a change in custody in his petition to modify, at trial he elected to seek only a change in parent-time. The court then explained that to modify a custody order, a party must show both that "(1) a material and substantial change in circumstances has occurred, and (2) a modification would be in the best interest of the children." As relevant here, the court then made two specific findings pertaining to the change in circumstances requirement. First, the court found that "the [2020 Order] in fact reflects the results of robustly contested litigation aimed at ascertaining the best interest of the [C]hildren." Second, the court examined each of Father's alleged changed circumstances and found that "there has not been a material and substantial change in circumstances shown that would support a modification in the current custody order."

¶18 As to child support, the district court concluded that although there had not been a substantial and material change sufficient to warrant a change in custody, a change in child support was nevertheless warranted due to "material changes of 30% or more in the income of a parent." Father verbally indicated his agreement with the court's position. In response, Mother also agreed to "stipulate to modification of child support," as long as her income was set at what "she testified to at trial, which . . . was $76,000 a year." The court then ruled:

> So my findings for purposes of child support are that the parties' incomes are as stated in their financial declarations. [Father's] financial declaration was stated as $5,808, his monthly income. [Mother's] monthly income stated in her financial declaration was actually $6,599. And I

went back and looked at the testimony and the business expenses that were claimed. And I understand that in the real estate business, that things go up and down and that . . . the cost of doing business goes up and down. And that may change from time to time. So I . . . don't want to see a roller coaster going on here, where you're . . . forced to go back and forth . . . each year. So for purposes of child support, that is what my ruling is.

Thereafter, the court asked Mother's counsel to calculate child support "based on the number of days that each party has the [C]hildren."

ISSUES AND STANDARDS OF REVIEW

¶19    Father now appeals, raising two issues for our review. First, Father argues the district court abused its discretion when it declined to modify parent-time on the ground that Father had not demonstrated a material and substantial change in circumstances. "When reviewing such a decision, we review the district court's underlying findings of fact, if any, for clear error, and we review for abuse of discretion its ultimate determination regarding the presence or absence of a substantial change in circumstances. The district court's choice of legal standard, however, presents an issue of law that we review for correctness." *Spencer v. Spencer*, 2023 UT App 1, ¶ 13, 524 P.3d 165 (quotation simplified).

¶20    Second, Father argues the district court abused its discretion when it calculated Mother's income for child support purposes. "In reviewing child support proceedings, we accord substantial deference to the district court's findings and give it considerable latitude in fashioning the appropriate relief. We will not disturb that court's actions unless the evidence clearly preponderates to the contrary or there has been an abuse of

discretion." *Twitchell v. Twitchell*, 2022 UT App 49, ¶ 18, 509 P.3d 806 (quotation simplified).

ANALYSIS

I. Custody and Parent-Time

¶21 While not challenging any of the district court's factual findings, Father argues the court abused its discretion in determining there had not been a substantial and material change in circumstances warranting a modification of parent-time. Father contends the court "applied the wrong legal standard" when evaluating whether the changes alleged in his petition to modify were sufficient to warrant a modification. Specifically, Father asserts the court should have required a "lesser" showing of a change of circumstances because (1) he was seeking to modify parent-time, not custody; (2) he was seeking to modify a stipulated order; and (3) the provisions in the 2020 Order were temporary. Father argues that under this "lesser" standard, he made a sufficient showing to justify a modification. Because Father's argument hinges on whether the court correctly applied the statutory standard for modifying a custody order, we begin by discussing that standard. We then evaluate the application of that standard to the factual findings made by the court.

A.      Statutory Standard for Modification of a Custody Order

¶22 To modify a custody order, a district court must engage in a two-step procedure. First, the court must find that "a material and substantial change of circumstance has occurred." Utah Code § 30-3-10.4(4)(b)(i). Second, the court must find that "a modification of the terms and conditions of the order would be an improvement for and in the best interest of the child." *Id.* § 30-3-10.4(4)(b)(ii).

¶23 To satisfy the first step, "the party seeking modification must demonstrate (1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody." *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982). "Only if circumstances have materially and substantially changed may the court proceed to the second step—a determination as to the manner in which custody should be modified, if at all, based on a de novo review of the child's best interests."[2] *Doyle v. Doyle*, 2011 UT 42, ¶ 24, 258 P.3d 553 (quotation simplified). "The district court's determination that there has or has not been a [material

---

2. At the outset of the trial, the parties discussed how to present their respective cases in light of the two-step approach. Mother suggested that the district court should "bifurcate[] the process and handl[e] it in two different phases." Father pushed back on Mother's suggestion, acknowledging that although Father would not be entitled to relief absent a showing of a material and substantial change in circumstances, that showing was "so intertwined" with the second-phase best-interest inquiry "that it [would] not make sense to hear them separately." Ultimately, the court agreed with Father that "these issues are somewhat intertwined" and declined to bifurcate the trial. Father's position and, in turn, the court's decision, are consistent with Utah caselaw. Our supreme court has recognized that some early Utah cases addressing the two-step approach could be read as supporting the notion that each step should be completely "bifurcated." *See, e.g.*, *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982). However, the court has since clarified that our two-step approach requires "only analytical—and not formal procedural—bifurcation," recognizing that "the evidence supporting changed circumstances is often the same evidence that is used to establish the best interests of the child." *Doyle v. Doyle*, 2011 UT 42, ¶¶ 28, 33, 258 P.3d 553 (quotation simplified).

and] substantial change in circumstances is presumed valid and is reviewed only for an abuse of discretion." *Harper v. Harper*, 2021 UT App 5, ¶ 13, 480 P.3d 1097 (quotation simplified).

¶24 "Because the required finding of a material and substantial change of circumstances is statutory, neither this court nor the supreme court has purported to—or could—alter that requirement." *Peeples v. Peeples*, 2019 UT App 207, ¶ 13, 456 P.3d 1159 (quotation simplified). As such, the change-in-circumstances requirement applies in all cases where a district court is considering a petition to modify custody. However, Utah courts have recognized that in certain cases, a petitioner seeking to modify a custody order may be required to make a *lesser showing* that a change of circumstances qualifies as "sufficiently substantial and material." *Hogge*, 649 P.2d at 54. Courts have allowed a lesser showing in two general types of cases.

¶25 The first category of cases turns on "the type of modification sought." *Haslam v. Haslam*, 657 P.2d 757, 758 (Utah 1982). "While altering custody orders generally requires a showing of substantial change in circumstances material to the modification of custody, a lesser showing may be required when the change sought is not a change of custody." *Jones v. Jones*, 2016 UT App 94, ¶ 10, 374 P.3d 45 (citation omitted). Where a petitioner is seeking to modify parent-time, rather than custody, "the petitioner is required to make only *some* showing" of a material and substantial change in circumstances, "which does not rise to the same level as the substantial and material showing required when a district court alters custody." *Erickson v. Erickson*, 2018 UT App 184, ¶ 16, 437 P.3d 370 (quotation simplified). Indeed, a court may "determine that a change in circumstances warrants modification of parent-time while simultaneously determining there is no substantial and material change in circumstances to justify a modification of custody. In other words, it is not necessarily erroneous for a court to determine that a particular change in circumstances is sufficient enough to warrant a change

in a parent-time schedule, but not significant enough to warrant a modification of custody." *Id.*

¶26 "Custody and parent-time are conceptually distinct." *McFarland v. McFarland*, 2021 UT App 58, ¶ 36, 493 P.3d 1146 (quotation simplified). "[P]hysical custody encompasses the ability to make day-to-day decisions in a child's life," *Blake v. Smith*, 2023 UT App 78, ¶ 15, 534 P.3d 761, whereas "parent-time more narrowly refers to the amount of time that a parent is entitled to spend with the child," *Widdison v. Widdison*, 2022 UT App 46, ¶ 44, 509 P.3d 242 (quotation simplified). Moreover, there are two types of physical custody: joint physical custody and sole physical custody. *See* Utah Code § 30-3-10.1(3)(a). The "dividing line" between the two is statutorily defined by "the number of overnight visits enjoyed by each parent." *McFarland*, 2021 UT App 58, ¶ 36. When a "child stays with each parent overnight for more than 30% of the year," the parents have joint physical custody of the child. Utah Code § 30-3-10.1(3)(a). But when a child stays with one parent for "at least 70% of the overnights," that parent is considered to have "sole physical custody" of the child. *See McFarland*, 2021 UT App 58, ¶ 36. Therefore,

> when a change occurs that causes one parent to obtain enough additional overnights to move from one category to another (e.g., from 25% of overnights to 35%, or from 65% to 75%), there has been a change in physical custody. But when a change occurs in which one parent obtains a few additional overnights but not enough to move from one category to another, the change constitutes only a change in parent-time, and not a change in physical custody, as that term is statutorily defined.

*Id.* (quotation simplified). Thus, although parent-time and custody are conceptually distinct, a parent-time schedule is merely a subspecies of a custody order, *see* Utah Code § 30-3-10(1),

and modification of a parent-time schedule is therefore governed by the same statute that controls modification of a custody order, *see id.* § 30-3-10.4.

¶27 The second category of cases turns on "the nature of the underlying custody award." *Zavala v. Zavala*, 2016 UT App 6, ¶ 17, 366 P.3d 422. The change-in-circumstances requirement for modifying a custody award "is based in the principles of res judicata, for courts typically favor the one-time adjudication of a matter to prevent the undue burdening of the courts and the harassing of parties by repetitive actions." *Taylor v. Elison*, 2011 UT App 272, ¶ 13, 263 P.3d 448 (quotation simplified). But not all custody decrees are adjudicated; indeed, a custody award may be "determined by stipulation or default." *Elmer v. Elmer*, 776 P.2d 599, 603 (Utah 1989). In cases where a district court is considering an unadjudicated award, such as the stipulated award at issue in this case, "the res judicata policy underlying the changed-circumstances rule is at a particularly low ebb." *Id.* Because of this, "a lesser showing will support modifying a stipulated award than would be required to modify an adjudicated award." *Zavala*, 2016 UT App 6, ¶ 17.

¶28 A court assessing exactly how much lesser the required showing might be should not "view the adjudicated/stipulated dichotomy as entirely binary" but should instead "examine the origin of the order in question and analyze the extent to which the order—even if stipulated—reflects the result of robustly contested litigation aimed at ascertaining the best interest of the child." *Peeples*, 2019 UT App 207, ¶ 17. Thus, in a situation where a custody order is technically stipulated, the court may nevertheless decline to water down the change-in-circumstances showing if the circumstances are such that the court has a "relatively high confidence that the custody order was in line with the best interests of the children." *Id.* ¶ 20; *see also id.* ¶ 18 (concluding that although the custody order being modified was technically stipulated, the district court did not err in requiring a normal

change-of-circumstances showing because the stipulation was entered after the parties participated in years of litigation, during which they were represented by counsel); *Spencer v. Spencer*, 2023 UT App 1, ¶ 19, 524 P.3d 165 (same).

## B. Modification of Parent-Time

¶29 With this legal standard in mind, we now turn to Father's contention that the district court abused its discretion in finding that he had not shown a sufficient change in circumstances to justify modifying parent-time. Father raises three arguments in support of his contention. First, he argues that the changes occurring between the 2019 Stipulation and the March 2022 trial constitute "sufficient" changes to justify modification of parent-time under the lesser change of circumstances showing. Second, he argues that modifying the 2020 Order based on the 2019 Stipulation also required a lesser showing because the 2020 Order was not the product of "robustly contested litigation." Third, he asserts that the "conditional" nature of the 2019 Stipulation should have factored into the court's change-of-circumstance analysis. We address each argument in turn.

### 1. Allegations of Changed Circumstances

¶30 In arguing that he made a sufficient showing to justify a change in parent-time, Father points to three things that occurred between the 2019 Stipulation and the March 2022 trial date that he believes constitute sufficient changes to justify modification of parent-time. Those changes are (1) Father's relocation to Utah, (2) the Children's strong relationship with Stepmother, and (3) Mother's troubling behaviors and "emotional reactivity." But the first two changes on which Father focuses here were not alleged in his petition to modify (or even addressed in his trial memorandum). Nor did they constitute changes that have occurred since the entry of the 2020 Order. And the district court properly concluded that the changes that *were* alleged in Father's petition did not justify revisiting the 2020 Order.

¶31 Father's petition alleged several instances of changed circumstances. After hearing two days of evidence, the district court rejected all of them. It found that three of Father's allegations—those relating to the Children's schooling, Mother's alleged cohabitation, and the issue with vaccinations and medical care—were not supported by any credible evidence. It found that Father's need to participate in training courses for his employer once or twice a year and Mother's failure to use a Google calendar were not material changes. And, after analyzing Mother's finances, it rejected Father's assertion that Mother could not financially provide for the Children.

¶32 The district court also considered and appropriately rejected the allegation raised by Father that Mother's behaviors and emotional reactivity were a changed circumstance that had negatively impacted the Children. Instead, it found that the way in which both Mother and Father have interacted contributed to the Children's need for counseling and that this situation was not a change from prior interactions. It reached a similar conclusion with respect to Father's allegation that Mother had attempted to undermine him with the Children. And Father has not challenged any of these factual findings.

¶33 Father's two remaining arguments are that his relocation to Utah and the strong relationship that the Children had forged with Stepmother constitute changed circumstances. But these arguments fail to account for the fact that Father had already remarried and planned on returning to Utah at the time of the 2019 Stipulation. Indeed, the primary rationale for the 2019 Stipulation (on which the 2020 Order was based) was Father's planned relocation and the 2020 Order had *already* increased Father's parent-time based upon that relocation.

¶34 We therefore conclude that the district court correctly applied the change-in-circumstances requirement when determining that Father had not demonstrated a sufficient

change. As the party seeking modification, Father bore the burden of demonstrating "(1) that since the time of the previous decree, there [had] been changes in the circumstances upon which the previous award was based; and (2) that those changes [were] sufficiently substantial and material to justify reopening the question of custody." *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982). After considering the evidence presented over the course of the two-day trial, the court concluded that Father had not carried his burden on any of the changes alleged in his petition to modify. Even assuming, for purposes of the discussion, that Father needed to make only a "lesser" showing of changed circumstances, it was not an abuse of discretion here for the court to determine that Father's showing was insufficient. Because Father has not demonstrated that the court abused its discretion in so finding, we will not second-guess the court's determination. *See Harper v. Harper*, 2021 UT App 5, ¶ 13, 480 P.3d 1097 ("The district court's determination that there has or has not been a substantial change in circumstances is presumed valid and is reviewed only for an abuse of discretion." (quotation simplified)).

2. Stipulated Order

¶35 Father next contends the district court should have allowed him to get by with a lesser showing of a change of circumstances because he was seeking to modify a stipulated order. However, on the facts of this case, Father has not demonstrated that the court abused its discretion in declining to allow a lesser showing on this basis.

¶36 In its order declining to modify Father's parent-time, the district court considered whether the 2020 Order should be considered stipulated or adjudicated. Citing *Zavala v. Zavala*, 2016 UT App 6, 366 P.3d 422, the court explained that the "adjudicated/stipulated dichotomy is not strictly binary" but instead requires an examination of the "origin" of the underlying order. *See id.* ¶ 17. The court then found that, "after examining the

record and considering the testimony presented, the [2020 Order] in fact reflects the results of robustly contested litigation aimed at ascertaining the best interest of the [C]hildren."

¶37 Although Father believes the district court should have permitted him to make a lesser change-in-circumstances showing because the 2020 Order was stipulated, he has not directly challenged the court's factual finding that the 2020 Order was the "result[] of robustly contested litigation aimed at ascertaining the best interest of the [C]hildren." Given the court's unchallenged finding, which is supported by the record and entitled to deference on appeal, we will not reweigh the evidence. *See Lobendahn v. Lobendahn*, 2023 UT App 137, ¶ 27, 540 P.3d 727 ("The existence of conflicting evidence in the record is not sufficient to set aside a district court's findings. The pill that is hard for many appellants to swallow is that if there is evidence supporting a finding, absent a legal problem—a fatal flaw—with that evidence, the finding will stand, even though there is ample record evidence that would have supported contrary findings." (quotation simplified)). Consequently, Father has not demonstrated that the court abused its discretion in rejecting his argument that the nature of the 2020 Order allowed him to make a lesser showing of a substantial and material change in circumstances.

3.     Temporary Order

¶38 Lastly, Father contends the district court should have considered the 2020 Order as a "temporary order[], which require[s] no showing of changed circumstances to modify, rather than a fully enforceable custody order." *See Harper v. Harper*, 2021 UT App 5, ¶ 17, 480 P.3d 1097 ("[U]nlike a permanent custody order, a temporary custody order is modifiable without a showing of a substantial and material change in circumstances."). We disagree with Father's contention that the 2020 Order was "temporary."

¶39    Because the 2020 Order was stipulated, Father contends it must be "interpreted as if it were a contract between the parties." *See McQuarrie v. McQuarrie*, 2021 UT 22, ¶ 18, 496 P.3d 44. To that end, he argues, we should "consider each provision [of the 2020 Order] in relation to all others, with a view toward giving effect to all and ignoring none." *Id.* (quotation simplified).

¶40    The 2020 Order provides that "[u]pon [Father's] move to Utah, on a temporary basis until further agreement of the parties or further order of the Court, [Father] shall exercise [extended] parent-time" pursuant to statute. The 2020 Order then outlines the procedure for changing that parent-time: "[A]fter exercising [extended] parent-time for at least (6) months and communicating in writing the desired change in parent-time, the parties will mediate parent-time."

¶41    Taken together, Father contends these provisions indicate (1) that the conditional parent-time schedule was meant to be temporary and (2) that by entering into the 2019 Stipulation, the parties essentially agreed that Father would not be required to show a change in circumstances in order to modify parent-time. Father is wrong on both fronts.

¶42    First, the extended parent-time schedule did not have an expiration date. Although the provision refers to the schedule being used on a "temporary basis," when considered in conjunction with the rest of the provision, it is clear that the schedule was intended to be ongoing. Indeed, "temporary basis" is followed immediately after with the phrase "further agreement of the parties or further order of the Court." As a whole, then, this implies that the schedule outlined in the 2020 Order would continue until the parties could agree on a new schedule or until the court ordered something different. And if neither the parties

nor the court sought to change the schedule, then it would remain in place.[3]

¶43　Second, nothing in the 2020 Order explicitly or impliedly eradicated the change-in-circumstances requirement; instead, that order merely set forth part of the *process* for changing custody. Pursuant to the 2020 Order, the only condition the parties put on modifying the extended parent-time schedule was to notify the other party in writing, triggering a mediation. Father argues that "interpreting that language to mean nothing more than how a party would normally go about modifying a custody order would render that language . . . superfluous." Thus, in Father's view, "when Mother and Father agreed that either party could request to modify the parent-time once the conditions in the provision were met, . . . the parties essentially agreed that satisfaction of the conditions (Father's relocation and exercising the section 30-3-35.1 schedule for six months) constitute a changed circumstances sufficient to modify this parent-time in the future."

¶44　But "essentially agreeing" is not enough to override the change-in-circumstances requirement. *Cf. id.* ¶¶ 23–27 (concluding that a divorce decree did not require payment of alimony after remarriage because there was no provision "specifically overrid[ing] the statutory presumption" that alimony terminate upon remarriage (quotation simplified)). The district court is statutorily required to find a material and substantial change in circumstances prior to modifying a custody order. *See* Utah Code § 30-3-10.4. Thus, without a specific

---

3. This conclusion is also bolstered by the fact that the 2020 Order contains other provisions that were not meant to be temporary. For example, the 2020 Order provides that summer parent-time is to be scheduled with Mother exercising "first choice . . . in odd years." This language is closely mirrored in a provision outlining which years the parties can claim the Children for tax purposes, with the parties to "alternate years."

provision overriding the change-in-circumstances requirement, the court was bound by statute to find that circumstances had sufficiently changed prior to modifying the 2020 Order.[4] *See McQuarrie*, 2021 UT 22, ¶¶ 23–27.

¶45 In sum, the 2020 Order was not temporary. The district court therefore did not err when it declined to treat that order as a temporary order.

## II. Child Support

¶46 Next, Father argues the district court abused its discretion when ordering child support. Specifically, Father contends the court erred in calculating Mother's income because the court deducted Mother's business expenses from her gross income even though Mother did not prove what those expenses were. But we discern no abuse of discretion in the court's calculation of Mother's net income.

¶47 "A noncustodial parent's child support obligation is calculated using each parent's adjusted gross income." *Twitchell v. Twitchell*, 2022 UT App 49, ¶ 34, 509 P.3d 806 (quotation simplified). When a parent is self-employed, "gross income" is calculated by "subtracting necessary expenses required for self-employment . . . from gross receipts." Utah Code § 78B-12-203(4)(a). However, "[o]nly those expenses necessary to allow the business to operate at a reasonable level may be deducted from gross receipts." *Id.* The individual claiming business expenses carries the burden of demonstrating that "those expenses are necessary to allow the business to operate at a reasonable level."

---

4. Moreover, the district court specifically found that nothing in the 2019 Stipulation or the 2020 Order "would make inapplicable the statutory requirement that a party requesting a change to the custody order must allege and prove a material and substantial change in circumstances." Father has not challenged this finding as clearly erroneous.

*Ouk v. Ouk*, 2015 UT App 104, ¶ 4, 348 P.3d 751 (quotation simplified). Because the district court is "best equipped to find whether expenses are necessary," we accord a court broad discretion to make such determinations. *Barrani v. Barrani*, 2014 UT App 204, ¶ 11, 334 P.3d 994 (quotation simplified). "Generally, so long as the steps by which the ultimate conclusion on each factual issue was reached are apparent, a [district] court may make findings, credibility determinations, or other assessments without detailing its justification for finding particular evidence more credible or persuasive than other evidence supporting a different outcome." *Twitchell*, 2022 UT App 49, ¶ 36 (quotation simplified).

¶48 Shortly before trial, Mother filed an updated financial declaration, which listed her net monthly income as $6,599. Mother supported the declaration with her 2020 tax return and three months of bank statements. The tax return listed $106,408 in gross income and $30,745 of expenses, resulting in a net income of $75,663. Those expenses included advertising, vehicle expenses, insurance, office expenses, office rent, office supplies, bank charges, membership dues and fees, education costs, internet fees, telephone charges, referral fees, software fees, website charges, equipment fees, and broker fees. At trial, Father presented Mother's 2020 tax return as an exhibit, and Mother testified regarding the information contained therein. Mother's testimony regarding her income was largely consistent with the information listed in her tax return. She testified that her 2020 net income was "right around $76,000," because even though her gross income was over $106,000, she had "lots of business expenses" totaling around "30-something-thousand dollars." Mother then listed a number of those expenses. Father did not object during this portion of Mother's testimony, nor did he object to the admission of the underlying evidence; indeed, Mother's tax return was offered into evidence by Father himself.

¶49　Based on this evidence, the district court ordered that child support payments be calculated using "the incomes listed on the parties' financial declarations," with Father's monthly income set at $5,808, and Mother's monthly income set at $6,599. The court explained, "Real estate income and costs fluctuates, and the Court does not want to see a change of child support every year, and therefore sets child support with the income listed on the financial declaration." We discern no abuse in the district court's calculation of Mother's net income. As the person claiming business expenses, Mother bore the burden of proving that her expenses were necessary. *See Ouk*, 2015 UT App 104, ¶ 4. To that end, Mother submitted a financial declaration, which was supported by a tax return and bank statements, showing her business expenses. And at trial, she further testified as to these expenses. All this evidence was unrefuted by Father. Because there was evidence before the court regarding Mother's business expenses, we must defer to the court's determination that Mother has carried her burden of proving those expenses.

## CONCLUSION

¶50　The district court did not abuse its discretion when it declined to modify Father's parent-time. In particular, the court did not abuse its discretion in concluding, on this record, that Father had not made even a "lesser" showing of changed circumstances. And the court did not abuse its discretion in calculating Mother's net income.

¶51　Affirmed.

————————